Fay **WALL** et al., Appellants,

v.

**LOWER COLORADO RIVER AUTHORITY, Appellee.**

No. 12333.

Court of Civil Appeals of Texas, Austin.

April 28, 1976.

Coleman Gay, Gay & Latting, Austin, for appellants.

John D. Pieratt, Austin, for appellee.

SHANNON, Justice.

Appellants, Fay Wall, LaVerne English, and their mother, Bessie K. English, filed a declaratory judgment suit against appellee, the Lower Colorado River Authority, to determine their rights in a tract of land out of the James O. Clark Survey. The land in question is located between the 715-foot contour line and Lake Travis.

The 715-foot contour line is a line 715 feet above mean sea level as established by the United States Geological Survey Bench Marks. At the time the 715-foot line was established, appellee was in the process of constructing a dam across the Colorado River west of Austin and downstream from the land in controversy. The dam when completed, had a spillway elevation not exceeding 715 feet, and the land below the contour line was subject to submerging and overflow by flood water. The waters backed up from that dam form what is now known as Lake Travis.

Appellants pleaded that in April, 1940, A. J. English and his wife, Bessie K. English owned 98 acres out of the John Moat Survey located in Travis County. At that time the Lower Colorado River Authority owned an adjoining 195 acres out of the James O. Clark Survey No. 1.

Appellants averred further that in April, 1940, the Englishes agreed that they would grant to the Lower Colorado River Authority "a perpetual easement and right to overflow 32.79 acres" of the 98 acres of land owned by them in the Moat Survey. The 32.79 acres of land were located below the 715-foot contour line. In consideration for that grant, the Lower Colorado River Authority agreed to convey to the Englishes in fee, the portion of the 195 acres owned by it in the Clark Survey above the 715-foot con-

tour line, and an easement in that part of the land located below the contour line.

Pursuant to that agreement, the Englishes executed their deed conveying to the Lower Colorado River Authority "a perpetual easement and right to inundate, submerge and overflow all of [their] certain tracts or parcels of land situated in John Moat Survey . . . which will at any time be inundated, submerged or overflowed, or in any manner affected by virtue of the construction, erection and maintenance of a dam in the Colorado River . . ." being a 32.79-acre portion of the said 98 acres located below the 715-contour line.

In consideration for that deed, the Lower Colorado River Authority conveyed to A. J. and Bessie K. English, all of that portion of the 195-acre tract out of the Clark Survey located above the 715-foot contour line, 83.-96 acres, and an easement in, over and across that portion of that tract located below the 715-foot contour line. The easement was described as follows:

". . . the grantees [the Englishes] are given the right of ingress and egress across the land retained by grantor [the Lower Colorado River Authority] in said Clark Survey to the waters' edge, and that grantor will not erect a fence separating its land in said Clark Survey from the land herein conveyed, and that grantees herein are given the right to maintain and control all outside fences in the said Clark Survey to the waters' edge, and that the use of such surface by grantees shall not be considered adverse to the rights of grantor, or start or support the operation of any of the statutes of limitation of this State; and grantees assume all risks and waive any and all damages in the use of the surface of said land."

In the same conveyance it was recited that ". . . it is distinctly understood and agreed that the land which lies below said 715 foot contour line and between said line and the Colorado River and which is described in the above mentioned deed is not conveyed hereby, but that the full fee simple title to such property which lies below said 715 foot contour line is retained by the Lower Colorado River Authority . . ."

Appellants pleaded that A. J. English and the appellants made such use of the land below the 715-foot contour line as they desired to make, including grazing of livestock thereon, using the property for going to and from Lake Travis, placing trailer houses and minor structures thereon, and, in general, using the property for "general lakefront purposes."

Appellants prayed that the district court declare that they had the right to use the land below the 715-foot contour line as "lakefront" property to the extent that it might be reasonably necessary or appropriate to the use and enjoyment of said land as lakefront property, including the right to build and maintain such buildings, structures, and facilities as were useful and appropriate for lakefront property, subject to all rights in and to the land granted to and retained by the Lower Colorado River Authority.

After trial to the court, judgment was entered that the appellants take nothing. Upon request the district court filed findings of fact and conclusions of law. The court found that since the execution of the deeds in 1940, appellants had made various uses of that portion of the lands in the Clark Survey located below the 715-foot contour line. Appellants had farmed portions of that land when the lake was down, had run cattle on the land, and had rented boats and boat stalls to the public since 1956 or 1957. The court found further that appellants had verbally leased parts of the land to others for the maintenance of trailer houses and similar living quarters.

The court concluded, in effect, that the only use afforded by the deed from the Lower Colorado River Authority to the Englishes of the land in the Clark Survey located below the 715 contour land was to allow the Englishes' livestock to have access to the water's edge of Lake Travis. The court concluded further that any other use would be inconsistent with the intention of

the parties "as interpreted from the four corners of the aforementioned Deed."

The scope of an express easement is determined by the same rules which are applicable to deeds and other written instruments. *Armstrong v. Skelly Oil Co.*, 81 S.W.2d 735 (Tex.Civ.App.1935, writ ref'd). Parol evidence is admissible to explain ambiguities apparent on the face of the writing. 2 McCormick and Ray, *Texas Law of Evidence* § 1685 (1956). If there is no ambiguity, the construction of the writing is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corporation*, 361 S.W.2d 193 (Tex.1962). Generally, in the case of an unambiguous writing, the courts will give effect to the intention of the parties as expressed by or as is apparent from the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is the objective, not the subjective, intent which controls. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex. 1968). No interest in real property passes by implication as incidental to the grant of the easement except that which is reasonably necessary to the fair enjoyment of the easement. *Coleman v. Forister*, 514 S.W.2d 899 (Tex.1974).

We do not understand the terms of the easement granted to Englishes to be ambiguous.

The extent of the easement granted to the Englishes to that part of the land in the Clark Survey below the 715-foot contour line is governed by the terms of the deed executed by the Lower Colorado River Authority. A reading of that deed shows that the Lower Colorado River Authority retained the fee simple title to that land in the Clark Survey below the 715 line. By the terms of the deed the only right conferred upon the Englishes was the right of ingress and egress across the land to the edge of the water.

Appellants insist that by the authority of *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669 (1959), they may use and enjoy the land in controversy, including the right to build, construct and maintain on the land such buildings, structures, and facilities as are useful and appropriate for lakefront property. In *Friedsam*, the grantor, Linda Lou Friedsam, conveyed 386 acres out of a larger tract to Ulbricht, Heckman, and Prade. One side of the 386-acre tract was bounded by the 1020-foot contour line along the shores of Lake Buchanan. Ulbricht contended, *inter alia*, that he and the others had the right to use the land below the 1020-foot contour line for certain purposes. The deed from Linda Lou Friedsam to Ulbricht ". . . contained no exceptions or reservations of any easements or rights of any kind or character . . ."

As we understand *Friedsam*, the Supreme Court recognized an easement by necessity in Ulbricht for the use and enjoyment of the land below the 1020-foot contour line.

In the case at bar, we are concerned with the construction of an express easement. There is no implied easement as incidental to the grant of the express easement except that which is reasonably necessary to the fair enjoyment of the express easement. *Coleman v. Forister, supra.* The only right conferred upon the Englishes by the deed was the right of ingress and egress across the land to the water's edge. There was no implied easement, incidental to the grant of the express easement, to build, construct, and maintain on the land in controversy such buildings, structures, and facilities as are useful and appropriate for lakefront property.

Appellants point to their continued use of the subject land for more than fifteen years. They argue that their use of the land and the acquiescence of the Lower Colorado River Authority in that use indicates the interpretation placed upon the easement by the parties themselves. That interpretation, appellants say, should be

given weight. We would agree with appellants if we were of the opinion that the express easement was ambiguous. As we are of the opinion that the meaning of the easement is plain and unambiguous, the use of appellants and the acquiescence of appellee are not to be considered. *Highland Farms Corporation v. Fidelity Trust Co.,* 125 Tex. 474, 82 S.W.2d 627 (1935).

The judgment is affirmed.

Affirmed.