Louie P. BRADSHAW, Appellant,

v.

LOWER COLORADO RIVER AUTHORITY, Appellee.

No. 8131.

Court of Civil Appeals of Texas, Beaumont.

Nov. 9, 1978.

Harold G. Kennedy, Austin, for appellant.

L. C. Meyer, Austin, for appellee.

KEITH, Justice.

Defendant below appeals from an adverse judgment in a suit for declaratory judgment and incidental injunctive relief.

On November 14, 1938, O. S. Bradshaw, his wife, Ollie Bradshaw, and Mary Jane Kennedy granted to the Lower Colorado River Authority (LCRA) an inundation easement up to the 670-foot above mean sea level contour line on a 212-acre tract out of the Fedile Seaholzer Survey No. 18 in Burnet County, Texas. LCRA needed this property to build the Marshall Ford Dam to a level of 670 feet. On May 26, 1942, O. S. Bradshaw and Ollie Bradshaw granted to LCRA an inundation easement up to the 715-foot contour line on the 212-acre tract when LCRA decided to raise the dam's elevation to 715 feet.

In return for the second easement plus the payment of $950, LCRA conveyed to the Bradshaws by deed dated December 20, 1941, a 94.41-acre tract, adjoining their 212 acres, out of the Allison Williams Survey No. 19 and the Fedile Seaholzer Survey No. 18.

When Congress appropriated the money to raise the elevation of the Marshall Ford Dam, it added a proviso that the land from approximately the 681-foot contour line to the 715-foot line would be reserved for flood storage for the prevention of downstream flooding. Therefore, there was a strip of land between the 94.41 acres and the Marshall Ford Reservoir. The 1941 deed contained a provision concerning that strip of land:

"It is agreed and understood by the parties hereto that the Lower Colorado River Authority, its successors and assigns have and retain the full title and interest in and to the land lying below the 715' contour line which lies between the land described above as being conveyed hereby and the Colorado River, and the right of the Lower Colorado River Authority, its successors and assigns to use said land so retained by it for any purpose that it may see fit is hereby expressly recognized, and, subject to said rights and privileges on the part of the Lower Colorado River Authority and its successors and assigns, the grantees herein are hereby given the right of ingress and egress across said land so retained by grantor so that grantees may reach the water's edge of the Marshall Ford Reservoir, and grantees are hereby given the right to maintain outside fences on said

land to the water's edge, but the Lower Colorado River Authority and its successors and assigns shall have the right at any time it sees fit to place gates or cattle guards in said fences at any place that it desires and to use the same for the purpose of using the land retained by it . . . . ."

For several years, the Bradshaws, and later the defendant who is their son and successor in title, operated a ranch with livestock on the 94.41-acre tract and allowed other families to come on the property, for a fee, for camping, boating, fishing, and other recreational purposes. These families were allowed to select their own campsite and place a trailer, mobile home, or other temporary shelter on their campsite. Some of these campsites were located between the 94.41-acre tract and the Marshall Ford Reservoir below the 715-foot contour line. LCRA discovered these campsites in 1973.

LCRA filed suit for declaratory judgment to determine its rights under the 1941 deed with respect to the land between the 94.41 acres and the reservoir. Defendant filed a counterclaim for declaratory judgment to determine his rights to the 212 and 94.41-acre tracts.

The trial court rendered a judgment in favor of LCRA and a take nothing judgment for defendant in his counterclaim and specifically found that defendant has no other property rights in the land below the 715-foot contour line other than to use it "to gain reasonable access for its [his] grazing livestock and to maintain outside boundary fences for the containment of such livestock."

Defendant appeals, seeking relief from the trial court's limited construction of the right of ingress and egress conferred by the deed and from the trial court's refusal to grant him declaratory relief.

In his first point of error, defendant complains that the trial court erred in concluding that he had no other property right other than to use the questioned land to gain reasonable access for his grazing livestock and to maintain outside boundary fences for the containment of such livestock. Before we discuss this first point, we must first determine the kind of right that was granted to the Bradshaws.

This court in *Stuart v. Larrabee*, 14 S.W.2d 316, 319 (Tex.Civ.App.—Beaumont 1929, writ ref'd), summarized the law on easements:

"A right of way is either in gross or appurtenant. The first is attached to and vests in the person to whom it is granted. The second is an incident to an estate, one terminus of which is the land or tenement of the party claiming it. It inheres in the land, concerns the premises, and pertains to its enjoyment and passes with it. . . . Easements in gross are not favored, and an easement will never be presumed to be a mere personal right when it can be fairly construed to be appurtenant to some other estate. Whether an easement is in gross or appurtenant must be determined by the fair interpretation of the grant or reservation creating the easement, aided, if necessary, by the situation of the property and the surrounding circumstances."

When LCRA deeded the 94.41 acres of property to grantees, LCRA reserved the land below the 715-foot contour line between the tract and the reservoir for flood control purposes. The reservoir has fluctuating lake levels because of its being a flood control lake. Whenever the lake level gets above the flood line (681–691 feet), the flood gates are opened to lower the level. Consequently, there is always LCRA land between the 94.41-acre tract and the water's edge.

In the 1941 deed, the grant clause provides in part that LCRA "does GRANT, SELL and CONVEY, subject to the conditions set out below, *to the said O. S. Bradshaw and wife, Ollie Bradshaw*, all that certain tract or parcel of land consisting of 94.41 acres . . . .." (emphasis added) The reservation clause, like the grant clause, specifies that "the grantees herein" are given the rights of ingress and egress and to maintain outside fences. Neither

clause provides for grantees' heirs or assigns. However, the habendum clause recognizes the rights of grantees' heirs and assigns:

"TO HAVE AND TO HOLD the above described property, *together with all and singular the rights and appurtenances thereunto in any wise belonging*, subject to the conditions set out hereinabove, *unto the said O. S. Bradshaw and wife, Ollie Bradshaw, their heirs and assigns forever* . . . ." (emphasis added)

The habendum clause together with the fact that the reservoir could not be reached from the 94.41-acre tract without the ingress and egress easement, supports a construction of the easement provision to create an appurtenant easement.

LCRA contends that this easement is a defeasible one because the reservation clause recognized that LCRA, its successors and assigns could "use said land so retained by it for any purpose that it may see fit" and made the grantees' easement "subject to said rights and privileges on the part of the Lower Colorado River Authority and its successors and assigns."

■ The term "subject to" is a term of qualification, meaning "subordinate to," "subservient to," or "limited by." *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex.Civ. App.—Dallas 1950, writ ref'd), and cases cited therein, quoted in *Cockrell v. Texas Gulf Sulphur Company*, 157 Tex. 10, 299 S.W.2d 672 (1956), and *Rourke v. Garza*, 511 S.W.2d 331, 343 (Tex.Civ.App.—Houston [1st Dist.] 1974), affirmed, 530 S.W.2d 794 (Tex.1976). Therefore, we construe the above deed provisions to limit defendant's easement. We do not construe them broadly enough to allow LCRA to arbitrarily divest defendant, his heirs or assigns of their easement rights at any time it so desires. Rather, we construe them to mean that the LCRA may restrict or prohibit the usage of the easement by defendant, his heirs or assigns in part or in whole whenever LCRA decides to use the property in a manner that is inconsistent with the easement.

The 1941 deed provides that the grantees were given "the right of ingress and egress across said land so retained by grantor so that grantees may reach the water's edge of the Marshall Ford Reservoir" and "the right to maintain outside fences on said land to the water's edge." Defendant contends that the right of ingress and egress extended to the grantees as well as their livestock.

■ The construction of an unambiguous writing is a question of law. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *Wall v. Lower Colorado River Authority*, 536 S.W.2d 688, 691 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.); *Stitt v. Royal Park Fashions, Inc.*, 546 S.W.2d 924, 926 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.). The courts will generally give effect to the parties' intention as expressed by the writing because the objective intent of the parties controls. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); *Wall*, supra, at 691; *Stitt*, supra, at 926.

In the case of *Wall v. Lower Colorado River Authority*, supra, the court was confronted with a deed provision similar to the one before us. The grantees were given " 'the right of ingress and egress across the land retained by grantor [the Lower Colorado River Authority] in said Clark Survey to the waters' edge' " and " 'the right to maintain and control all outside fences in the said Clark Survey to the waters' edge.' " The trial court interpreted the ingress and egress right as allowing the grantees' livestock to have access to the water's edge of Lake Travis. (536 S.W.2d 690) The Austin Court, in affirming the trial court's judgment, recognized that the grantees were given the right of ingress and egress across the land to the edge of the water (*Id.* at 691), but it did not limit this right to livestock as the trial court had done.

■ We do not find the terms of the Bradshaws' ingress and egress easement to be ambiguous. It is clear that they were granted the right of ingress and egress to reach the water's edge. The deed does not specify that the right extended only to the

watering of livestock. We believe the right should not be so narrowly construed, as there are other activities for which the grantees might want to use the public waters, i. e., boating, swimming, etc. Their right of ingress and egress should include being allowed to pass over the LCRA's property to reach the water's edge for these other activities. Therefore, we sustain defendant's first point of error.

In his fourth point of error, defendant complains that the trial court erred in limiting his ingress and egress rights to "reasonable access." We disagree.

In *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex.1974), our Supreme Court stated:

"A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." (citations omitted)

See also *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 287 (Tex.Civ.App.—Beaumont 1976, no writ), and cases cited therein. We find no error in the trial court's limitation of reasonableness and overrule defendant's fourth point.

We have reviewed the remaining points in defendant's brief and find no merit therein.

The judgment of the trial court is reformed to allow defendant to have reasonable ingress and egress rights across the land below the 715-foot contour line to reach the water's edge rather than to allow him only reasonable access for his grazing livestock.

Judgment of the trial court REFORMED and, as reformed, it is AFFIRMED.