doll 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 





NO. 3-93-153-CV





RONALD DOLL,



 APPELLANT


vs.





AMOR FORWOOD, III, AND WIFE, SUZANNE FORWOOD,



 APPELLEES




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT



NO. 913474, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





 The opinion issued herein on August 17, 1994, is withdrawn, and the following
opinion is filed in lieu thereof.

 This suit arose from a boundary line and easement rights dispute involving land in
the vicinity of Lake Travis. Appellant Ronald Doll appeals from a judgment in favor of appellees
Amor and Suzanne Forwood establishing a boundary line favorable to them, awarding them actual
damages and attorney's fees, and granting them permanent injunctive relief. In eighteen points
of error, Doll essentially complains that (1) the trial court erred in holding he was not entitled to
damages for an illegal credit check that Mr. Forwood allegedly made; (2) the court improperly
determined the scope of the easement; (3) the court improperly determined the boundary line
between the Doll and Forwood tracts; and (4) the court erred by not awarding Doll attorney's
fees. We will reform the trial court's judgment, affirm it in part, and reverse it in part.



BACKGROUND


 The Forwoods own a tract of land by Lake Travis. Doll owns the strip of land
between the Forwoods' tract and the lake. The Forwoods have an express easement of ingress
and egress over the Doll tract to get to the lake. In 1991, Doll bulldozed a road along the
lakefront. The parties began disputing the scope of the Forwoods' easement and the location of
the boundary line between their two tracts. The Forwoods sued for a judicial determination as
to the location of the property line, damages, injunctive relief, and attorney's fees. Trial was
before the court, and the court rendered judgment that the 685 foot contour of elevation was the
mutual boundary line, awarded the Forwoods actual damages and attorney's fees, and enjoined
Doll from interfering with the Forwoods' attempts to restore the roadway to its natural state or
from creating any other road that interferes with the Forwoods' easement. Doll appeals.



DISCUSSION


 In points of error nine, twelve, thirteen, and fourteen, Doll attacks the trial court's
conclusions of law relating to its determination of where the boundary is located between the Doll
and Forwood tracts.

 The trial court's conclusions of law are always reviewable. Middleton v. Kawasaki
Steel Corp., 687 S.W.2d 42, 44 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.). 
Erroneous conclusions of law are not binding on an appellate court. LaChance v. Hollenbeck, 695
S.W.2d 618, 622 (Tex. App.--Austin 1985, writ ref'd n.r.e.). Thus, conclusions of law will be
upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. 
Simpson v. Simpson, 727 S.W.2d 662, 664 (Tex. App.--Dallas 1987, no writ).

 This dispute arose because of an ambiguity in the legal description of the Forwood
property. The deed reads, in part:



 Beginning at the northeast corner of the tract conveyed to T.A. Bellamy and
wife, Pauline F. Bellamy, at an iron pin in a rock mound;

 Thence North 16 deg. 31' east following approximately contour 685 feet as
established by the Lower Colorado River Authority, 62.5 feet to an iron pin in a
rock mound; Thence North 49 deg. 51' east following the said contour 62.5 feet
to an iron pin in a rock mound. . . .



The ambiguity arises because if the 685 foot contour was intended as the boundary, two of the
calls for course and distance would actually be longer than described in the deed.

 None of the four surveyors that examined the disputed property were able to locate
"an iron pin in a rock mound" at the northeast corner of the Forwood tract, or any of the other
pins in rock mounds along the 685 foot contour as described in the deed. (1) The court concluded
that, since at least four of the artificial monuments in the original description of the Forwood
property could not be located, and since the boundaries of the tract as asserted by both Doll and
the Forwoods failed to coincide with the calls for course and distance in the deed, the court would
apply the general rules applicable to such boundary disputes. The general rules are that the
location of a boundary should be governed, first, by natural objects or boundaries; second, by
artificial marks; and third, by calls for course and distance. Stafford v. King, 30 Tex. 257, 272
(1867). The court concluded that the 685 foot contour as it exists in the disputed area is a "natural
object" as that term is defined in Stafford.

 Doll does not dispute that the general rules apply; he apparently concedes that when
an ambiguity exists in a deed, natural or artificial objects will control over calls for course and
distance. Nevertheless, Doll argues in point of error number nine that "a bulldozer clearing line
cannot be a `natural object' as that term is defined under Texas law, and therefore as a matter of
law the 685 foot contour line cannot be the boundary" between the two tracts. We first note that,
at least in one portion of Doll's argument under points of error nine through fifteen, Doll
apparently argues that the 685 foot contour line and the "clearing line" are not the same thing. 
He speculates that the Lower Colorado River Authority ("LCRA") cleared more land than
required to create the 685 foot contour, and, thus, the clearing line and the 685 foot contour are
not located in the same spot. (2) However, this argument conflicts with his actual point of error
which states "a bulldozer clearing line cannot be a `natural object' as that term is defined under
Texas law, and therefore as a matter of law the 685 contour line cannot be the boundary." 
(Emphasis added.) We will assume, for purposes of this appeal, that Doll intends to assert the
complaint presented in his actual point of error.

 Thus, we reach Doll's assertion that a contour line cannot be a "natural object." 
In his argument under this point of error, Doll does not distinguish the contour line in the instant
cause from any other; rather, he apparently asserts that contour lines can never be natural objects.

 The Stafford court gave the following examples of natural objects: "mountains,
lakes, rivers, creeks, rocks, and the like." Stafford, 30 Tex. at 271. Artificial objects are
"marked lines, trees, stakes, etc." Id. In explaining the rationale behind the rule that natural and
artificial objects shall control over course and distance, the Stafford court stated:



[C]ourse and distance are regarded as the most unreliable, and generally distance
more than course, for the reason that chain-carriers may miscount and report
distances inaccurately, by mistake or design. . . . But when the surveyor points
out to the owner rivers, lakes, creeks, marked trees, and lines on the land, for the
lines and corners of his land, he has the right to rely upon them as the best
evidence of his true boundaries, for they are not liable to change and the
fluctuations of time, to accident or mistake, like calls for course and distance; and
hence the rule, that when course and distance, or either of them, conflict with
natural or artificial objects called for, they must yield to such objects, as being
more certain and reliable.



Id. at 273.

 Even assuming a contour line is not a natural object, Doll has failed to argue that
it is not, at least, an artificial object. Artificial objects, like natural objects, control over course
and distance. Accordingly, Doll has failed to show why the court erred in concluding that the 685
foot contour was the appropriate boundary in the instant cause.

 Finally, Doll asserts that placing the boundary at the 685 foot contour violates the
principle of the "harmony of calls." Doll fails to present any argument or authority for this
contention, and therefore has waived the issue for our review. Tex. R. App. P. 74(f); see
Toungate v. Bastrop Indep. Sch. Dist., 842 S.W.2d 823, 828 (Tex. App.--Austin 1992, no writ);
Rayburn v. Giles, 182 S.W.2d 7 (Tex. Civ. App.--San Antonio 1944, writ ref'd). We overrule
points of error nine, twelve, thirteen and fourteen.

 In points of error ten and eleven, Doll attacks the legal and factual sufficiency of
the evidence supporting the trial court's findings of fact relating to the location of the boundary. 
Specifically, Doll attacks the court's findings that the 685 foot contour was "established" or
marked by the LCRA, and that the intent of the original grantor was for the 685 foot contour to
be the boundary line between the two tracts of land.

 We attach to a trial court's findings of fact the same weight that we attach to a
jury's verdict upon jury questions. Nelson v. Jordan, 663 S.W.2d 82, 86 (Tex. App.--Austin
1983, writ ref'd n.r.e.). Findings of fact are reviewable for legal and factual sufficiency of the
evidence by the same standards used to review jury findings. Okon v. Levy, 612 S.W.2d 938, 941
(Tex. App.--Dallas 1981, writ ref'd n.r.e.).

 In deciding a legal sufficiency point, we must consider only the evidence and
inferences tending to support the finding of the trier of fact and disregard all evidence and
inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert.
denied, 498 U.S. 847 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). When
considering factual sufficiency questions, we are required to review all the evidence in the record,
including any evidence contrary to the finding of the court, and decide whether the judgment is
so against the great weight and preponderance of the evidence as to be manifestly unjust. Beltran
v. Groos Bank, N.A., 755 S.W.2d 944, 945 (Tex. App.--San Antonio 1988, no writ) (citing In re
King's Estate, 244 S.W.2d 660 (1951)).

 In point of error ten, Doll asserts that the LCRA never marked or established the
685 foot contour line. The relevance of this assertion seems to relate to Doll's contention that the
original grantor did not intend the 685 contour to be the boundary. In an attempt to explain the
ambiguity in the deed, Doll argues the original grantor meant the clearing line to be the boundary,
but mistakenly assumed the 685 foot contour was the clearing line. Thus, under point of error
eleven, Doll asserts that the original grantor intended the boundary to run along a line he
"incorrectly believed was the 685 contour." Again, this argument conflicts with Doll's point of
error nine, which suggests that the clearing line is the 685 foot contour. Nevertheless, even
assuming the LCRA never marked the 685 foot contour, we conclude the evidence is sufficient
to support the trial court's finding that the original grantor intended the 685 foot contour to be the
boundary of the property.

 Whether the LCRA ever marked the 685 foot contour or actually cleared higher
than the 685 foot contour, as Doll speculates, is simply some evidence of whether the contour line
was visible at the time of the original deed. Doll's position seems to be either that the original
grantor could not have intended to place the boundary on the 685 foot contour if it was not visible,
or that the 685 foot contour is not a natural monument because it is not visible. Nevertheless, the
record contains additional evidence on the issue of the contour's visibility. There was also
testimony that, at least in the disputed area, a one-foot tall limestone ledge is located on the 685
foot contour. Thus, the Forwoods argue, the 685 foot contour is a natural monument not only
because it is the clearing line, but also because it is marked by a solid rock shelf that is highly
visible. Doll does not dispute this evidence. (3) Thus, we fail to see how he has proven the
evidence insufficient to support the trial court's finding that the original grantor's intent was to
place the boundary at the 685 foot contour. Accordingly, we conclude that, based on the record,
the evidence is factually and legally sufficient to support the trial court's finding that the original
grantor intended the 685 foot contour to be the boundary. Points of error ten and eleven are
overruled.

 In point of error fifteen, Doll attacks the court's finding that the Forwoods were
entitled to $3,000 for the damage resulting from Doll's bulldozing a road over the property. Doll
argues that "[t]he Forwoods presented no testimony and no evidence of any kind regarding the
actual damages they allegedly suffered." The Forwoods point to the following testimony as proof
of the damages they suffered.

 Forwood testified at trial regarding the effects of the bulldozed road on his
property. He testified that the entire character of his property had changed since the road was
bladed. He testified that the road had severely damaged his family's access to and from the lake,
had caused a severe intrusion on his family's privacy, and had created a "[g]reat, big caliche
mess" when it rained. Forwood then testified that, in his opinion, the market value of his
property without the road would be approximately $220,000 to $225,000. When asked whether
he had an opinion if the value of the property was any different after the road was put in,
Forwood stated, "Critically damaged, critically damaged, critically. Like I think it's worth a
third." Counsel then asked, "About a third of what it would be without that road?" Forwood
responded, "Sure. Lost the lake, the privacy."

 We conclude that Forwood's testimony as to the property's value after the road was
put in constitutes no evidence of its market value after the damage. See Porras v. Craig, 675
S.W.2d 503, 505 (Tex. 1984); Stinson v. Cravens, Dargan & Co., 579 S.W.2d 298, 299 (Tex.
App.--Dallas 1979, no writ). Although a landowner is qualified to testify as to the market value
of his own land, Porras, 579 S.W.2d at 505, his opinion as to market value must have some
factual basis other than personal factors. In other words, "Where the owner affirmatively
demonstrates . . . that his opinion is cast in terms of approximation and estimate unsupported by
any relevant facts leading to or supporting such approximation or estimate the opinion testimony
is too conjectural." Stinson, 579 S.W.2d at 299. We sustain appellant's fifteenth point of error. 
Accordingly, we reform the judgment to omit the $3,000 damage award to the Forwoods.

 In his sixteenth point of error, Doll complains that the trial court erred in allowing
Art Osborne to testify because of certain alleged discovery violations. (4) Osborne was the
Forwoods' surveyor called as an expert witness.

 The only argument Doll makes regarding Osborne's testifying is that:



All of Mr. Osborne's testimony should be disregarded because he was not timely
named as an expert, because he failed to issue the requested report, because
opposing counsel refused to produce him for deposition, and because his testimony
was permitted by the trial court over a proper and timely objection by Mr. Doll's
trial counsel.



Doll cites no factual or legal basis on which to sustain these broad assertions. He does not suggest
that he was in any way harmed by Osborne's testimony. Moreover, Doll has failed to present any
argument or authority to support these contentions, and therefore has waived these complaints for
our review. Tex. R. App. P. 74(f); Rayburn, 182 S.W.2d at 7; Toungate, 842 S.W.2d at 828. 
We overrule the sixteenth point of error.

 In point of error four, Doll contends that the court erred in its conclusion of law
number eight, which states:



Plaintiffs are entitled to an injunction permanently enjoining Defendant from
creating any other road that interferes with Plaintiff's easement to Lake Travis." (5) 
Specifically, Doll complains that the court erred in conclusion of law eight
"because the proper legal scope of the easement does not give the Forwoods the
right to restrict Mr. Doll's reasonable use of his fee simple property, or--in other
words--as a matter of law Mr. Doll's bladed road does not interfere `with
Plaintiffs' easement to Lake Travis,' and therefore the Forwoods are not entitled
to any injunction restricting Mr. Doll's reasonable use of his own property."



(Emphasis added.) Doll's attack on finding of fact number eight is based on his assertion that he
owns the disputed area. We have already concluded that he does not. Accordingly, we need not
address point of error four.

 In point of error five, Doll attacks the legal and factual sufficiency of the evidence
to support the trial court's finding of fact number twenty, which states: 



Even if the roadway were (contrary to fact) on property owned by Defendant over
which Plaintiffs would have an easement, the roadway would interfere
unreasonably with Plaintiff's right to access to and from Lake Travis over the
easement. The road makes a sharp turn where it reaches the Forwood Property,
and is dangerous to people (especially children) walking from the Forwoods' house
to the variable level of Lake Travis.



These findings and conclusions of the court would only become relevant had we decided that Doll
owns the disputed area, which we have not. Accordingly, we need not address point of error five.

 In points of error two, three, and six, Doll attacks various findings and conclusions
of the trial court related to the scope of the easement. He contends essentially that the Forwoods'
easement provides solely for ingress and egress to and from the lake, and that he is entitled to rent
and back rentals for the Forwoods' boat dock that is located on his property and secured by cables
running over his property.

 A. W. Brill and his wife were the common source of title as to the properties Doll
and Forwood own. The Brills conveyed the tract the Forwoods now own to S. B. Price in 1945. 
That deed created an easement over the land now owned by Doll (but then still owned by the
Brills) which stated:



 And there is further granted and conveyed hereby unto the said grantees and
their successors in title to the land hereinbefore described and conveyed, a
perpetual easement of the land in the said Thomas Sylvester Survey No. 73, and
W.J. Jolley Survey No. 54 lying between the 685 foot contour of elevation and the
variable water line of Lake Travis for the purpose of going to and from the
property above described and the waters of Lake Travis.



(Emphasis added.) Doll contends that the language of the easement is unambiguous and should
be given its plain meaning; that is, the easement should be construed as allowing solely for ingress
to and egress from the lake. We agree.

 The scope of an express easement is determined by the same rules applicable to
deeds and other written instruments. Wall v. Lower Colorado River Auth., 536 S.W.2d 688, 691
(Tex. Civ. App.--Austin 1976, writ ref'd n.r.e.). Parol evidence is only admissible to explain
ambiguities in the written instrument; if there is no ambiguity, the construction of the writing is
a question of law for the court. Id. A deed is ambiguous "if application of the pertinent rules of
interpretation to the face of the instrument indicates genuine uncertainty as to which one or two
of more meanings is the proper one." Lakeside Launches v. Austin Yacht Club, 750 S.W.2d 868,
870 (Tex. App.--Austin 1988, writ denied) (citations omitted). Usually, the "instrument alone will
be deemed to express the intention of the parties for it is the objective, not the subjective, intent
which controls." Wall, 536 S.W.2d at 691 (citing City of Pinehurst v. Spooner Addition Water
Co., 432 S.W.2d 515 (Tex. 1968)).

 In the instant cause, the plain language of the deed conveying the easement creates
an easement solely for ingress and egress to the lake. Thus, the real issue for determination is
the scope of the easement. The Forwoods contend that a reasonable use of the easement in the
instant cause is the tying of a boat dock or swimming platform over Doll's land with a cable
running across his land. We disagree.

 In determining the scope of an easement, we may "imply only those rights
reasonably necessary to the fair enjoyment of the easement with as little burden as possible to the
servient owner." Lakeside Launches, 750 S.W.2d at 871. We conclude that a reasonable use of
the easement in the instant cause does not include the Forwoods' maintaining a boat or swim dock
and cable over Doll's property. See id. at 871; Wall, 536 S.W.2d at 691.

 The Forwoods argue, however, that we should consider the deed of Doll's
predecessor in title in order to determine the true intention of Mr. Brill in conveying the easement. 
The Forwoods present no authority or argument for this proposition, see Tex. R. App. P. 74(f),
and we will not entertain it here. See Bartel v. Pick, 643 S.W.2d 224, 226 (Tex. App.--Fort
Worth 1982), aff'd, 659 S.W.2d 636 (Tex. 1983) (holding improper the admission of a deed into
evidence as parol evidence of the existence of a "right of way" allegedly conveyed in another
deed); see also Miles v. Martin, 321 S.W.2d 62, 66 (Tex. 1959). We sustain points of error two,
three, and six.

 In point of error seven, Doll complains that the trial court erred in failing to find
that the Forwoods owed Doll $10,800 for back rentals on the Forwoods' boat dock. In point of
error eight, Doll contends the court erred in failing to find facts and state conclusions of law
regarding the scope of the easement with respect to the boat dock and Doll's right to receive back
rentals for the dock.

 We first note that the court did file findings of fact and conclusions of law
regarding the scope of the easement and back rentals for the boat dock. Thus, point of error eight
has no merit. However, the court's conclusion that Doll was not entitled to any damages arising
from the Forwoods' maintaining a boat dock on Doll's land is apparently based on its "finding" (6)
that the use of the boat dock constituted a reasonable use of the easement. In light of our holding
concerning the scope of the easement, we remand the issue of damages for the trial court's
reconsideration.

 Doll's first point of error challenges the trial court's twelfth conclusion of law. 
Conclusion of law number twelve states:



During the course of trial, Defendant introduced evidence to the effect that on or
about February 2, 1991, Plaintiff Amor Forwood III obtained credit information
through TRW Credit Data with regard to Defendant. Defendant did not introduce
any evidence of damages arising from such alleged conduct and therefore did not
establish a right to any judgment against Plaintiff arising out of such alleged
conduct.



 Doll complains that conclusion of law twelve is erroneous because it addresses an
issue concerning a purportedly illegal credit check which "was not raised by the pleadings, was
not tried by consent, and was not supported by any findings of fact." Doll does not complain that
the trial court's judgment was erroneous as a result of conclusion of law number twelve; rather,
he merely argues that the conclusion itself should be stricken from the record since it involves an
issue that was never tried. The Forwoods respond that this court need not address whether the
trial court correctly concluded the credit check issue since the record reflects that the trial court
did not base its judgment on this conclusion of law.

 The purpose of conclusions of law is to indicate to appellate courts the theories on
which a case has been tried. 6 Richard Orsinger, McDonald Texas Civil Practice § 18:3(a)
(1992). Conclusions of law do not bind the appellate court, however, and we may thus disregard
them if controlling findings of fact nevertheless support a correct legal theory. See De Benavides
v. Warren, 674 S.W.2d 353, 362-63 (Tex. App.--San Antonio 1984, writ ref'd n.r.e.). Moreover,
incorrect legal conclusions do not mandate reversal of a trial-court judgment. Id.

 In the instant case, we have already held that findings of fact support the trial-court
judgment in part. As such, even if Doll correctly argues that the trial court reached an erroneous
conclusion of law, the complaint has no effect on this appeal. We must affirm the judgment based
on theories properly tried and supported by findings of fact. The appellate court has the duty to
uphold the judgment on any legal theory of law applicable to the case, even when some or all of
the trial court's conclusions of law are erroneous. Id. at 363; Wirth, Ltd. v. Panhandle Pipe &
Steel, Inc., 580 S.W.2d 58, 62 (Tex. Civ. App.--Tyler 1979, no writ). Thus, we overrule Doll's
first point of error.

 In his seventeenth and eighteenth points of error, Doll complains of the trial court's
award of attorney's fees to the Forwoods. The trial court awarded the Forwoods attorney's fees
pursuant to section 37.009 of the Texas Civil Practices and Remedies Code. Tex. Civ. Prac. &
Rem. Code Ann. § 37.009 (West 1986). We will remand the issue of attorney's fees to the trial
court in light of our disposition above.

 In conclusion, we reverse the portion of the trial court's judgment regarding the
scope of the easement, the portion that orders Doll take nothing on his claim for damages for boat
dock rentals, (7) and the portion awarding attorney's fees only to the Forwoods. We reform the
judgment to omit the $3,000 damage award to the Forwoods. We remand the issues of Doll's
damages, if any, and attorney's fees to the trial court for further proceedings consistent with this
opinion. The remainder of the judgment, as reformed, is affirmed. 



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Jones

Reformed and, as Reformed, Affirmed in Part; Reversed and Remanded in Part

Filed: November 9, 1994

Do Not Publish

1.   Kent McMillan, a surveyor, testified that he found two old galvanized iron pipes at
the property, which he thought were probably the original stakes used to mark the
property, but neither of which he believed to be at their original positions. 
2.   In so arguing, Doll is further speculating that the original grantor's intent was to
place the boundary on the clearing line, as opposed to the 685 foot contour, which Doll
asserts is closer to the lake.
3.   In his original brief, Doll does not even address this evidence. In his supplemental
brief, Doll concedes that the rock shelf is located on the 685 foot contour, but argues that
the Court should not rely on that fact because there is no proof the rock shelf was located
on the 685 foot contour when the grantor prepared the original deed. While it is possible
that the rock shelf coincidentally developed exactly upon the 685 foot contour between the
time of the original grant and the time the Forwoods brought suit, we have no reason to
assume so. Furthermore, Doll has produced no evidence to the contrary, but simply
speculates that the ledge might not have been there at the time of the original conveyance.
4.   We note, however, that Doll refers to Osborne's testimony in support of one of his
points of error on appeal.
5.   Apparently, this conclusion of law is based on the court's finding of fact twenty-two,
which states:


Defendant has stated an intention to blade, bulldoze, and/or fill the property
in the vicinity of the roadway in the event that Plaintiffs attempt to return the
area to its condition as it existed prior to Defendant's blading or bulldozing
the roadway. The Court finds that Defendant will engage in such conduct
and will attempt to prevent Plaintiffs from returning the area to its prior
condition unless enjoined from such conduct. 
6.   This should have been a conclusion of law.
7.   The trial court's rulings on these issues are set forth specifically in the court's
conclusions of law and are subsumed in the judgment through the Mother Hubbard
Clause.