**L.T. ADAMS and Marjorie Adams, Appellants,**

v.

**NORSWORTHY RANCH, LTD., Appellee.**

No. 03–97–00550–CV.

Court of Appeals of Texas, Austin.

Aug. 31, 1998.

W. Thomas Buckle, Scanlan, Buckle & Young, P.C., Austin, for Appellants.

Philip D. Mockford, Small, Craig & Werkenthin, P.C., Austin, for Appellee.

Before YEAKEL, C.J., and ABOUSSIE and JONES, JJ.

YEAKEL, Chief Justice.

Appellants L.T. and Marjorie Adams (the Adamses) filed suit against appellee Norsworthy Ranch, Ltd. alleging a right to access their property by three routes crossing the adjoining Norsworthy Ranch: express easement, easement by implication, and easement by prescription.[1] Appellee filed a counterclaim seeking a declaration that the Adamses' right of access was limited to one route expressly provided in a written easement agreement executed by the previous owners of Norsworthy Ranch in favor of the Adamses. At the conclusion of a bench trial, the court rendered judgment in favor of appellee. We will affirm the trial court's judgment.

## BACKGROUND

In 1941, John and Mayme Ruth Hunnicutt sold to the Adamses 24.86 acres of land out of approximately 450 acres they owned in far west Travis County and Hays County. The property purchased by the Adamses, bordered on the west by Roy Creek, the north by the Pedernales River, and the south and east by the remainder of the Hunnicutt property, is beautiful but rugged, with springs, large cypress trees and a canyon which at the property's south end is fifty to sixty feet deep, full of boulders, and becomes progressively deeper as it approaches the Pedernales River to the north. At the time of the purchase, the closest public road was the Austin and Hamilton Pool Road,[2] which ran along the northern boundary of the Hunnicutt property. Thus, to have access to their property the Adamses had to cross the Hunnicutt property.

About two months after the sale, the Hunnicutts executed and delivered to the Adamses a written easement expressly granting the Adamses access to their property from the Austin and Hamilton Pool Road. At that time, the Hunnicutt property was traversed by an old mail route running from the Austin and Hamilton Pool Road along the eastern and southern edges of the Adams property toward Dripping Springs. This road has now been paved and is known as the Improved Ranch Road. Since their purchase of the property, the Adamses' primary access to it has been from the Austin and Hamilton Pool Road along the Improved Ranch Road to a second road, the Adams Ranch Road, which runs west from the Improved Ranch Road, then over the Adams Access Road and onto their property at its northern end.

In the 1980s, Betty Norsworthy acquired the remainder of the Hunnicutt property and an adjacent tract of land to the south, the whole of which is now referred to as Norsworthy Ranch. She and her son later transferred Norsworthy Ranch to appellee Norsworthy Ranch, Ltd.

In 1993, appellee installed a fence along the boundary between Norsworthy Ranch and the Adams property, but gated the fence at the location where the Adams Access Road crosses onto the Adams property. The Adamses thus now have access to their property over Norsworthy Ranch by way of but a single route.

---

1. The Adamses do not pursue their prescriptive easement claim on appeal.

2. We will refer to the various roads adjacent to and across Norsworthy Ranch as they have been designated and referred to by the parties.

The Adamses, however, claim three routes through Norsworthy Ranch and sued appellee asserting the various easement claims and requesting damages and other ancillary relief. Appellee counterclaimed seeking a declaratory judgment limiting the Adamses to the single route which existed after the construction of the fence. A bench trial was held, after which the trial court rendered judgment in favor of appellee, holding that a single route had been granted in 1941 by express easement over the Improved Ranch Road to its intersection with the Adams Access Road and then over the Adams Access Road to the Adams property. The trial court further held that this is the only easement the Adamses are entitled to use to cross Norsworthy Ranch to and from their property. Pursuant to the Adamses' request, the trial court made findings of fact and conclusions of law. The Adamses also filed a motion to modify the judgment and a motion for new trial, both of which were overruled by operation of law.

## DISCUSSION

### Easement Rights

In points of error one and two, the Adamses contend that they were granted an implied easement to use the Improved Ranch Road to access the south portion of their property as well as the north. In the alternative, they argue that the language of the original written easement signed by the Hunnicutts expressly provides for more than one right of ingress and egress to their property off the Improved Ranch Road.

■ An easement by "implied grant" is created when the dominant estate is conveyed by the grantor. *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex.App.—San Antonio 1996, writ denied) (citing *George v. Phillips*, 642 S.W.2d 275, 277 (Tex.App.—Texarkana 1982, no writ)). In this case, the dominant estate (the Adams property) was conveyed by the Hunnicutts to the Adamses in 1941. The situation of the parties at the time of the conveyance constitutes the operative facts to support a claim of a grant by implication. *See id.* at 111; *see also Hoak v. Ferguson*, 255 S.W.2d 258, 260 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.).

However, an express written easement exists in this case. Although there was a two-month gap between the sale of the property to the Adamses and the execution of the written easement, the parties do not dispute that at the time the easement was created, its language accurately reflected the intention of the parties to the transaction—the Adamses and, as predecessors in title to appellee, the Hunnicutts. We do not find the short span of time between the Hunnicutts' execution of the deed and the written easement agreement to be significant. Moreover, although the deed and the express easement agreement were signed two months apart, they were filed and recorded on the same day. Therefore, we hold both instruments to be part of but one transaction and their respective executions were for all practical purposes simultaneous.

■ When an express easement exists there can be "no implied easement incidental to the grant of the express easement except that which is reasonably necessary to the fair enjoyment of the express easement." *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974). Accordingly, we must first look to the plain language of the written easement agreement to determine the rights of ingress and egress expressly granted the Adamses before we can determine whether the Adamses have met the requirements for an easement by "implied grant." *See id.; see also Capitol Rod & Gun Club v. Lower Colorado River Auth.*, 622 S.W.2d 887, 893–94 (Tex.App.—Austin 1981, writ ref'd n.r.e.); *Wall v. Lower Colorado River Auth.*, 536 S.W.2d 688, 691 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

■ "The scope of an express easement is determined by the same rules which are applicable to deeds and other written instruments." *Wall*, 536 S.W.2d at 691 (citing *Armstrong v. Skelly Oil Co.*, 81 S.W.2d 735 (Tex.Civ.App.—Amarillo 1935, writ ref'd)). Unless cause exists for going outside the language of the express easement or there is a finding that such language is ambiguous, the Adamses must rely on that document alone. *See Coleman*, 514 S.W.2d at 903. In the case of an unambiguous writing, courts

will give effect to the intention of the parties as expressed by or as apparent from the writing. *See Wall,* 536 S.W.2d at 691.

In this case, neither party pleaded that the written easement is ambiguous. The parties do acknowledge that it lacks definite terms and descriptive language, such as metes and bounds describing the right of access to the Adams property, which make it difficult and cumbersome to determine the rights expressly granted. However, "the fact that an easement clause is vague, indefinite, or uncertain will not necessarily authorize the court to completely ignore the valuable right thereby granted if the clause is susceptible of a reasonable construction as to the true intent of the parties." *Elliott v. Elliott,* 597 S.W.2d 795, 802 (Tex.Civ.App.—Corpus Christi 1980, no writ) (citing 21 Tex. Jur.2d *Easements* § 13, pp. 132–33 (1961)). Furthermore, "[a]n express grant of a right-of-way set out in general terms without specifying the exact place for its location can be made certain by the act of the grantee in selecting the easement." *Id.* Once selected, the grantee's easement rights become fixed and certain. *Id.* (citing *Houston Pipe Line Co. v. Dwyer,* 374 S.W.2d 662, 666 (Tex.1964); 21 Tex. Jur.2d *Easements* § 45, pp. 173–74 (1961)).

We agree with the reading of the express language of the easement as determined by the trial court. The only right conferred upon the Adamses was by way of what the trial court defined as the "Easement Road": over the Improved Ranch Road to the Adams Access Road and along the Adams Access Road to the gate on the north end of the Adams property. The grant expressly provides an "easement of passing in and along a certain way or road ... across all of said [Norsworthy] Ranch ... along the route or routes that will render the land [of Adamses] ... most conveniently accessible to the Austin and Hamilton Pool road ... together with free ingress, egress and regress to and for ... Adams ... as shall be necessary or convenient at all times and seasons forever." The Adamses contend that the easement language contemplates the possibility that the Adamses may use multiple points along the Improved Ranch Road to access their prop-

erty. They argue that "route or routes" can be interpreted to allow the Adamses multiple access routes off the Improved Ranch Road to their property. However, we find that a reading of the easement's plain language also supports the trial court's holding an express grant of only one means of accessing the Adams property—by way of a route along the Improved Ranch Road to the Adams Access Road.

The express easement provides for the "most necessary and convenient" "route or routes" to the Adams property from the Austin and Hamilton Pool Road. The record reveals that the Easement Road is the most necessary and convenient access to the Austin and Hamilton Pool Road. The record contains evidence that the Adamses chose this route as the way to access their property. Lew Valentine Adams, the Adamses' son, testified that over the years his family used several points of access off the Improved Ranch Road south of the Adams Access Road, but he also testified that the family had used the Easement Road—along the Improved Ranch Road and Adams Access Road to the northern gate on their property—for as long as he could recall. Further, Marjorie Adams testified that the Easement Road was the original access route and the primary route of travel to their property for over fifty years. Therefore, we conclude that the evidence supports the trial court's conclusion that "[t]he Easement Road establishes the location and dimensions of the easement conveyed to Mr. and Mrs. Adams in the Easement Document."

We also agree with the trial court's conclusion that the facts of this case do not justify the implication by law of greater or additional easement rights in favor of the Adamses. Even if the parties in this case had not expressly agreed to their easement rights, the Adamses have failed to meet the requirements for an implied grant of an additional easement. To establish the existence of an implied easement, a party must show that (1) there was unity of ownership of the dominant and servient estates and that the use was (2) apparent, (3) in existence at the time of the grant, (4) permanent, (5) continuous, and (6) reasonably necessary to

the enjoyment of the premises granted. *Daniel,* 917 S.W.2d at 110 (citing *Bickler v. Bickler,* 403 S.W.2d 354, 357 (Tex.1966); *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 207 (Tex.1963); *Hoak,* 255 S.W.2d at 260; *Miles v. Bodenheim,* 193 S.W. 693, 696 (Tex.Civ.App.—Texarkana 1917, writ ref'd)). "In cases involving easements by implied grant, it is sufficient if the easement in question was reasonably necessary to the convenient and comfortable enjoyment of the property as it existed when the severance was made." *Id.* (citing *Fender v. Schaded,* 420 S.W.2d 468, 472 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.); *Teich v. Haby,* 408 S.W.2d 562, 566 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.); *Barrick v. Gillette,* 187 S.W.2d 683, 687 (Tex.Civ.App.—Eastland 1945, writ ref'd w.o.m.); *Scarborough v. Anderson Bros. Const. Co.,* 90 S.W.2d 305, 310 (Tex.Civ.App.—El Paso 1936, writ dism'd)).

 Because the Adamses have been granted an access route along the Easement Road pursuant to the express language of the written easement, they cannot show that an additional easement route is "reasonably necessary to the convenient and comfortable enjoyment of the property as it existed when the severance was made." The Adamses assert that they are unable to travel by car to the southern boundary of their property from the Easement Road access on the northern portion due to the condition of the land. However, they concede that they can travel by foot and could build a road, but at great expense. "When one has access to a part of his tract of land by way of travel over his own property, this, as a matter of law, is a better and more direct route than one which burdens an adjacent landowner. . . .

It does not matter that the route across one's own land is longer, more circuitous, or in an inferior condition physically." *Sentell v. Williamson County,* 801 S.W.2d 220, 223 (Tex. App.—Austin 1990, no writ). Only when there is *no* way through his own land can a grantee claim a right over that of a grantor. *Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 640 (1958). Thus, the trial court properly found that the Adamses are able to obtain access across their own land from the terminus of the Easement Road and are therefore not entitled to an additional grant by implication.[3] Points of error one and two are overruled.

### Easement Width

 In their third point of error, the Adamses contend that the trial court's finding that their easement is fifty feet wide directly contradicts evidence introduced at trial tending to show that the easement should be sixty feet wide—1983 and 1995 surveys describing the width of the Improved Ranch Road as sixty feet. Review of the record reveals, however, evidence that not all of the easement was surveyed to a sixty-foot width. The Easement Road follows the Improved Ranch Road to the Adams Access Road. The surveys relied on by the Adamses only describe the Improved Ranch Road, an asphalt road which is the main thoroughfare for travel across Norsworthy Ranch. The asphalt on the Improved Ranch Road measures only twelve feet in width. The Adams Access Road is merely a dirt road which has not been improved by the Adamses for at least twenty years. Considering the character of the Adams Access Road, it was reasonable for the trial court to find that an easement of fifty feet in width would allow the

---

3. The Adamses rely on *Teich v. Haby,* 408 S.W.2d 562 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.), and *Daniel v. Fox,* 917 S.W.2d 106 (Tex. App.—San Antonio 1996, writ denied), for the proposition that "reasonable necessity" requires that they be granted access to the southern portion of their property from an additional access point along the Improved Ranch Road due to the impassable condition of their property. However, both cases can be distinguished from this case. Neither case involved an express easement. *Daniel* involved an easement by necessity; evidence indicated that the only way to cross the dominant estate was to cross a large creek. In

this case, the evidence supports the trial court's finding that the size, location, and physical characteristics of the Adams property would allow them to obtain access across their own land from the terminus of the Easement Road. *Teich* involved the purchase of a servient estate with an existing implied easement by grant. The court recognized the easement because it was the primary access route to the dominant estate and the only road that ran all the way through the dominant estate. In this case, the primary access route is the Easement Road, and the southern access the Adamses seek does not run through their property.

Adamses sufficient access to their property. Therefore, we find the evidence supports the trial court's finding that the easement is fifty feet in width. Point of error three is overruled.

### Other Damages

The Adamses argue in their final two points of error that the trial court erred in failing to award damages for trespass for appellee's encroachment on their easement rights and in failing to award attorneys' fees in connection with their request for declaratory relief. Having concluded that the trial court properly determined that the written easement expressly granted a single right of access to the Adams property by way of the Easement Road, and that the Adamses are not entitled to an additional implied easement by grant, we find no error in the trial court's conclusion that there was no trespass by appellee in its construction of the fence along the boundary of the two properties and in the trial court's denial of the Adamses' request for attorneys' fees. Points of error four and five are overruled.

### CONCLUSION

Having overruled all the Adamses' points of error, we affirm the judgment of the trial court.