TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00486-CV






G. L. Vinson/Charles M. Black, Jr.; Kenneth Bramblett; Jane Bramblett; Mural Cook;


Lynne Cook; Travis Duncan; Lydia Taylor McBride; Betty Melcher; Harold J.


Nelson; Nikki Perrotta; Janet R. Rader; Anne Marie St. Martin; Jerome


Urbanek; Theresa Wilson; John S. Avery; Judy Avery; Darin


Digby; Barbara Digby; Jana Buis; Julie Dees; and


John Sharp Avery, Appellants




v.




Charles and Cora A. Brown/G. L. Vinson, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 98-07508, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 The dispute in this case involves various property owners' easement rights to a park
that fronts on Lake Travis. G. L. Vinson ("Vinson"), the owner of the servient estate, appeals the
trial court's judgment declaring that Charles and Cora A. Brown ("the Browns") have an express
easement to use the park. In the court below, a number of other property owners identified as
Charles M. Black, Jr., et al ("the Intervenors") intervened in Vinson's lawsuit. (1) The Intervenors'
appeal challenges the trial court's failure to grant them easements to use the park. We will affirm
the trial court's judgment.


BACKGROUND

 In the 1940s, G. A. and Florence Butler Draper began to develop a subdivision on
property they owned on the north shore of Lake Travis in rural Travis County. The Drapers divided
the property into lots, named the subdivision Draper's Cove, and began selling these lots in 1948. 
Luster B. Hobbs purchased lots nine and ten in the subdivision in 1948. Fifty of the lots in Draper's
Cove, including lots nine and ten, do not front on Lake Travis. The deed of conveyance for lots nine
and ten ("the Hobbs deed") includes the following language intended to create an easement:


[A] permanent [easement] of the use, together with the owners of other tracts out of
said subdivision made by G. A. Draper in the Malinda Settle Survey, of a park
located about five hundred (500) feet East of Block No. One (1) of a subdivision out
of said survey made by Viggo Miller September 14, 1946 . . . and which park extends
to a cove on the Lake and the boundaries of which park to be marked and established
by said G. A. Draper.



The park described in the Hobbs deed lies at the center of the dispute in this case. Although the
Hobbs deed grants Hobbs use of the easement "together with the owners of other tracts out of said
subdivision," the deeds of others who purchased lots in the subdivision from the Drapers do not
contain express grants of easement to the park area. (2) However, there is evidence that many, if not
all, of the property owners in Draper's Cove have historically used the park area for recreation and
access to Lake Travis.

 G. A. Draper, also known as "Pa Draper," was pre-deceased by his wife. He died in
1973 without ever having explicitly marked and established the boundaries of the park as provided
for in the Hobbs deed. Draper's last will and testament ("the Will") contains a number of provisions
relevant to this dispute. The Will authorizes the executor to sell or dispose of any or all of Draper's
land. It also authorizes the executor to complete the Draper's Cove subdivision, including setting
aside park or community use areas for the benefit of property owners in the subdivision. The
executor of Draper's estate conveyed all land owned by Draper, including the park area in dispute,
to appellant G. L. Vinson in 1976. Although Vinson did not mark and establish the boundaries of
the park after this conveyance, the property owners in Draper's Cove continued to use this area of
the Vinson property for recreational and lake-access purposes. Charles and Cora A. Brown,
appellees, are successors-in-interest to Hobbs, having purchased lots nine and ten in 1980.

 In 1985, Vinson installed a locked gate at the road entrance to the park area and told
the property owners in Draper's Cove that they could only access the park by obtaining permission
and a key from him. Many, if not all, of the property owners did so, and the use of the park by the
property owners continued as before. However, in 1996, Vinson changed the lock on the gate and
informed the property owners that he was denying future access to the park to anyone who did not
purchase an easement from him for $5,000. Three property owners purchased easements from
Vinson, and he created a metes and bounds description of the park for these purchasers. The
Browns, protesting that they already possessed an express easement as successors-in-interest to
Hobbs, did not purchase an easement, and Vinson never issued them a key to the newly locked gate.

 In 1998, Vinson sued the Browns for damages and injunctive relief, alleging that they
had on several occasions damaged the gate, chain, and lock he had installed to control access to the
park. The Browns counterclaimed, seeking a declaratory judgment that they had an express
easement to use the park. A number of other property owners intervened in the lawsuit to establish
that they too had easement rights to use the park, either by express grant, prescription, implication,
or estoppel.

 The trial court determined certain issues as a matter of law and submitted other issues
to the jury for determination. Among those issues decided by the trial court as a matter of law were
the following: the Browns have an express easement appurtenant to lots nine and ten to use the park
for recreational purposes; the Intervenors do not have an express easement to use the park; the Will
did not create or set aside park or community use areas for the benefit of Draper's Cove property
owners; the Will did not create any interest in real estate, and did not create or grant any property
rights or easements; and the executor of Draper's estate did not exercise any of the authority granted
under the Will to set aside park or community use areas for the benefit of Draper's Cove property
owners. The trial court submitted the questions of whether the Intervenors possess easement rights
to the park by prescription, implication, or estoppel to the jury. The jury failed to find that the
Intervenors have any easement rights to the park. The trial court rendered judgment accordingly.

 Vinson appeals the trial court's declaration of an express easement in favor of the
Browns. The Intervenors also appeal, challenging the trial court's findings concerning an express
easement and the construction of the Will as well as the jury's failure to find for them on the issues
of easements by implication and estoppel.


DISCUSSION

Vinson's Appeal

 Vinson raises two points of error in his appeal. In his first point of error, Vinson
argues that the Hobbs deed violates the Statute of Frauds because it does not contain a legally
sufficient description of the location of the park. See Tex. Prop. Code Ann. § 5.021 (West 1984). 
In his second point of error, he argues that there is no evidence, or in the alternative, insufficient
evidence, of a legally sufficient property description of the park.

 As an interest in land, an express easement is subject to the Statute of Frauds. 
Anderson v. Tall Timbers Corp., 378 S.W.2d 16, 24 (Tex. 1964). Although the Statute of Frauds
provides that all contracts for the sale of real estate must be in writing, no requirements for the
writing, other than that it be signed by the grantor, are provided. Kmiec v. Reagan, 556 S.W.2d 567,
569 (Tex. 1977). It has been left to the courts to determine the substance and form a written
instrument must satisfy before it is enforceable. Id. Insofar as a description of the property to be
conveyed is concerned, the writing must furnish within itself the means or data by which that
particular land may be identified with reasonable certainty. Id.

 Vinson contends that the easement claimed by the Browns cannot be identified with
reasonable certainty because its description in the Hobbs deed is too vague. For example, Vinson
argues that the phrase "about five hundred (500) feet East of Block No. One" does not provide a
precise starting point for measuring from block one to the park, does not give an exact distance from
that starting point, and does not specify whether the park is due east or merely in an easterly direction
from block one. Similarly, he points out that the "cove on the Lake" mentioned in the description
is not named or otherwise explicitly identified. This vague language, Vinson asserts, leaves the
location of the easement too uncertain to satisfy the Statute of Frauds.

 However, the fact that an easement clause is vague, indefinite, or uncertain does not
authorize a court to completely ignore the valuable right thereby granted. See Adams v. Norsworthy
Ranch, 975 S.W.2d 424, 428 (Tex. App.--Austin 1998, no pet.). The purpose of a description in
a written conveyance is not to identify the land, but to afford a means of identification. Jones v.
Kelley, 614 S.W.2d 95, 99-100 (Tex. 1981). If enough appears in the description so that a person
familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the
Statute of Frauds. Gates v. Asher, 280 S.W.2d 247, 248-49 (Tex. 1955).

 Certainly, the Hobbs deed uses vague language and does not contain a metes and
bounds description of the park. With express easements, however, an exact designation of location
is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently
identified. See Jones v. Fuller, 856 S.W.2d 597, 602 (Tex. App.--Waco 1993, no writ). The Hobbs
deed sufficiently identifies the land to be burdened by its reference to "Block No. One (1) of a
subdivision out of said survey made by Viggo Miller." It then describes the location for the
easement in general terms, with the provision that the exact boundaries of the park will be marked
and established by Draper at a later time. Although Draper never marked and established these
boundaries, this inaction does not cause the grant to fail. We evaluate whether a description of land
is sufficient to comply with the Statute of Frauds as of the time the parties contracted. Eland Energy
v. Rowden Oil & Gas, 914 S.W.2d 179, 186 (Tex. App.--San Antonio 1995, writ denied). At the
time the grant was made, the provision for Draper to choose the park's boundaries, within a
generally-described area, furnished the means to identify the property interest conveyed with
reasonable certainty. We therefore conclude that the description of the park in the Hobbs deed is
legally sufficient to satisfy the Statute of Frauds. Vinson's first point of error is overruled.

 In his second point of error, Vinson contends that there is no evidence or, in the
alternative, insufficient evidence, to establish the property description of the park. Vinson asserts
that the trial court erred in declaring that the boundaries of the park are those set out in the metes and
bounds description created by Vinson for the property owners who purchased easements from him. 
In reviewing a no-evidence point, we consider all the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party's favor. Associated Indem. Corp.
v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold the finding if more
than a scintilla of evidence supports it. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499
(Tex. 1995). The evidence in support of a finding amounts to more than a scintilla if reasonable
minds could arrive at the finding given the facts proved in the particular case. Id. When reviewing
a verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the
evidence and should set aside the judgment only if the evidence is so weak as to be clearly wrong
and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 When an express easement is described in general terms without specifying its
location, the right to select the location usually belongs to the grantor. Holmstrom v. Lee, 26 S.W.3d
526, 533 (Tex. App.--Austin 2000, no pet.). But this right must be exercised in a reasonable
manner, and if the grantor of an easement fails to establish its location, the grantee may do so. 
Samuelson v. Alvarado, 847 S.W.2d 319, 323 (Tex. App.--El Paso 1993, no writ). The grantee's
use of the easement, with the consent or acquiescence of the grantor, is sufficient to establish the
easement's location. See Adams, 975 S.W.2d at 428; Elliott v. Elliott, 597 S.W.2d 795, 802 (Tex.
Civ. App.--Corpus Christi 1980, no writ).

 The Hobbs deed expressly reserved to Draper, the grantor, the right to mark and
establish the boundaries of the park. His failure to do so allowed the grantees, Hobbs and his
successors-in-interest, to establish the boundaries by their use of the park area. The trial court found
that the grantees' historic use of the park area had established these boundaries, and that the
boundaries thus established were identical to the metes and bounds description later created by
Vinson for subsequent easement purchasers. At trial, evidence was presented pertaining to the
historic use of the park area by the grantees and other Draper's Cove property owners. This evidence
included various deeds and instruments relating to Draper's Cove, testimony by the Browns and
other property owners, the testimony of a land surveyor, and a number of letters from Vinson to the
property owners. Considering all this evidence in the light most favorable to the verdict, as well as
considering all the evidence from a neutral perspective, we conclude that there is both legally and
factually sufficient evidence to support the trial court's finding. Vinson's second point of error is
overruled.


The Intervenors' Appeal

 The Intervenors, in their first four points of error, contest the factual and legal
sufficiency of the jury's failure to find easements by implication or estoppel. The burden of
establishing the elements of an easement is on the party claiming the easement. Wilson v. McGuffin,
749 S.W.2d 606, 609 (Tex. App.--Corpus Christi 1988, writ denied). Since the Intervenors are
attacking the failure of the jury to find on issues upon which they had the burden of proof, they must
demonstrate that their claims to easements by implication or estoppel were established as a matter
of law by the evidence in the trial record. See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690
(Tex. 1989). This is a difficult burden; essentially, the Intervenors must demonstrate, with regard
to these discrete issues, that they established all vital facts in support of the issues so conclusively
that they were entitled to judgment as a matter of law. See id.

 The Intervenors' first and second points of error relate to easements by implication. 
The elements of an easement by implication are as follows: (1) unity of ownership between the
dominant and servient estates; (2) apparent use of the easement at the time the dominant estate was
granted; (3) continuous use of the easement, so that the parties must have intended its use to pass by
grant with the dominant estate; and (4) reasonable necessity of the easement to the use and
enjoyment of the dominant estate. Bickler v. Bickler, 403 S.W.2d 354, 357 (Tex. 1966). Whether
these requirements have been met is to be determined as of the time of severance. Holden v.
Weidenfeller, 929 S.W.2d 124, 129 (Tex. App.--San Antonio 1996, writ denied).

 The relevant time of severance in this case is when each Intervenor or its
predecessor-in-interest originally purchased property from the Drapers in the 1940s. The parties
agree that unity of ownership has been established, but they dispute the remaining three elements of
an easement by implication. The Intervenors presented evidence at trial as to the apparent and
continuous use of the park, but Vinson, in his testimony, denied that the area was in use as a park
at the time of severance. Further, none of the testimony of the Intervenors or their fact witnesses
regarding the historic use of the park by property owners claimed use of the park back to the time
of severance. The Intervenors' assertion of the remaining element of an easement by implication,
reasonable necessity, is based on the fact that their lots do not front on Lake Travis. They argue that
access to the park for boating and other recreational purposes is therefore reasonably necessary for
the use and enjoyment of their lots. However, the deeds of the Intervenors, presented at trial, contain
express grants of easement to use other areas of the subdivision with lake frontage, namely the "East
beach" or the "West beach." Given the evidence controverting the Intervenors' claims, we cannot
say that they have conclusively established all of the elements of easements by implication so as to
entitle them to judgment on this issue as a matter of law. The Intervenors' first and second points
of error are overruled.

 The Intervenors' third and fourth points of error relate to easements by estoppel. The
doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped
from denying the existence of an easement by making representations that have been acted upon by
the owner of the alleged dominant estate. See Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 209
(Tex. 1962). The elements necessary to create an easement by estoppel are as follows: (1) a
representation was communicated, either by word or action, to the promisee; (2) the communication
was believed; and (3) the promisee relied on the communication. Storms v. Tuck, 579 S.W.2d 447,
452 (Tex. 1979). These elements apply at the time the communication creating the alleged easement
is made. Lakeside Launches, Inc. v. Austin Yacht Club, Inc., 750 S.W.2d 868, 872 (Tex.
App.--Austin 1988, writ denied). An easement by estoppel, once created, is binding upon
successors in title if reliance upon the existence of the easement continues. See Shipp v. Stoker, 923
S.W.2d 100, 102 (Tex. App.--Texarkana 1996, writ denied). However, no easement by estoppel
may be imposed against a subsequent purchaser for value who has no notice, actual or constructive,
of the easement claimed. Lakeside, 750 S.W.2d at 873.

 The jury, in determining whether the Intervenors possess easements by estoppel, was
charged with finding an easement by estoppel if:



 Pa Draper's statements, actions, and inactions established that he intended the
G. A. Draper Subdivision Property Owners to have the use of the land as a park;

 The G. A. Draper Subdivision Property Owners relied upon Pa Draper's
intention (1) in purchasing their lots or (2) improving their lots; and

 G. L. Vinson knew of Pa Draper's intention before G. L. Vinson purchased the
land from Pa Draper.




The Intervenors presented evidence in support of all three of these elements, but Vinson presented
evidence disputing whether the property owners relied on Draper's intention, and whether Vinson
had notice of Draper's intention before he purchased Draper's land. Given the evidence disputing
the Intervenors' claims, we cannot say that they have so conclusively established all of the elements
of easements by estoppel as to entitle them to judgment on this issue as a matter of law. The
Intervenors' third and fourth points of error are overruled.

 The Intervenors' fifth, sixth, and seventh points of error relate to the trial court's
conclusions of law concerning construction of the Will. Conclusions of law may not be reversed
unless they are erroneous as a matter of law. Westech Eng'g, Inc. v. Clearwater Constructors Inc.,
835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). We are not bound by the trial court's
conclusions, but its conclusions of law will be upheld on appeal if the judgment can be sustained on
any legal theory supported by the evidence. See id. Incorrect conclusions of law will not require
reversal if the controlling findings of facts will support a correct legal theory. Valencia v. Garza,
765 S.W.2d 893, 898 (Tex. App.--San Antonio 1989, no writ).

 The trial court's declarations of law were based on its interpretation of paragraphs 7
and 8 of the Will. Paragraph 7 contains a general grant of authority in Draper's executor.


I expressly authorize and empower my Executor to sell or otherwise dispose of all or
part of my estate, including all of my lands and real estate whether or not included
in the subdivision provided in Paragraph 8 hereof, but he shall not be required to sell
any of my lands unless he deems it necessary or advisable.



(Emphasis added.) This paragraph authorizes the executor to sell all of Draper's real estate,
including the lots in Draper's Cove that remained unsold at the time of Draper's death. Paragraph
8 of the Will states, in relevant part:


I do authorize, empower, and direct my Executor herein above named to do whatever
is necessary or appropriate to the completion of such subdivision [Draper's Cove],
and without limiting the foregoing general grant of power by implication, I expressly
authorize him to do the following:


(a) To set aside park or community use areas for the benefit of owners of lots in said
subdivision already sold by me . . . .



The trial court found that the executor exercised the authority granted in paragraph 7 and sold all of
the land in Draper's Cove to Vinson. However, the trial court declared that the executor did not
exercise any of the authority granted in paragraph 8. The court further declared that paragraph 8 did
not create or set aside park or community use areas, nor did it grant any property rights or easements. 
The Intervenors challenge the court's findings and assert that paragraph 8 must be read as an
independent grant of authority requiring the executor to create a park. The Intervenors contend that
the word "direct" in paragraph 8 operates as a mandate to the executor. Essentially, the Intervenors
argue that the Will should be read such that paragraph 8 trumps paragraph 7 and the executor is
prohibited from selling the subdivision before completing it.

 In interpreting a will, the proper function of the judiciary is to construe it according
to the intention of the testator as disclosed by the language used. Engelke v. Schultze, 275 S.W.2d
158, 159 (Tex. Civ. App.--San Antonio 1954, writ dism'd w.o.j.). Where its language is free from
doubt, a will is construed according to its legal import. Casey v. Kelley, 185 S.W.2d 492, 493 (Tex.
Civ. App.--San Antonio 1945, writ ref'd). Words of common use are given their plain and ordinary
meaning in the construction of a will, unless it appears from the context that they were used in a
different sense. Avis v. First Nat'l Bank, 174 S.W.2d 255, 258 (Tex. 1943).

 The Will expressly authorizes the executor to sell all of Draper's lands and real estate. 
The executor, according to the language in paragraph 7, is given broad power to sell Draper's real
property if the executor finds a sale to be advisable. Paragraph 7 specifically includes Draper's
remaining real estate in Draper's Cove as lands that may be included in a disposition of Draper's
property. On the other hand, the word "direct" in paragraph 8 is the third word in a series of words
that carries the connotation of authorize rather than command, i.e., authorize, empower and direct. 
In addition, the clause of paragraph 8 that expressly grants authority "to set aside park or community
use areas" specifically uses the word authorize and not direct. Therefore, we conclude that the word
"direct" in paragraph 8 is used more in the sense of authorize and empower and less in the sense of
command.

 Finally, in reading the two paragraphs together, we do not regard paragraph 8 as a
limitation on the broad grant of authority to sell contained in paragraph 7. To determine this issue
favorably to the Intervenors, we would have to construe the Will to state that the executor could only
sell the subdivision after its completion. We regard this interpretation as strained and contrary to the
broad powers extended to the executor in the Will. The Intervenors' fifth, sixth, and seventh points
of error are overruled.

 The Intervenors' eighth and final point of error is that the trial court erred in not
granting them an express easement to the park. They assert that if a number of documents relating
to the Draper's Cove area are read together, they support an express easement to use the park by the
property owners. The general rule for construing separate instruments or contracts together is that
those executed at the same time, for the same purpose and in the course of the same transaction may
be considered as one instrument, and may be read and construed together. Jones v. Kelley, 614
S.W.2d 95, 98 (Tex. 1981). However, even if the parties executed the instruments at different times,
those instruments pertaining to the same transaction may be read together to ascertain the parties'
intent. See Fort Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000). The
Intervenors contend that the following instruments should be read and construed together to create
an express grant of easement: a 1947 deed from the Lower Colorado River Authority to Draper
(conveying land that includes the disputed park area); the Hobbs deed (executed in 1948); the Will
(executed in 1973); a 1976 deed (conveying all of Draper's land to Vinson); and a 1996 deed from
Vinson to one of the property owners (conveying an easement to use the park). All of these
instruments were executed at different times, for different purposes, and in the course of different
transactions, and thus they cannot be considered as one instrument to be read and construed together. 
Therefore, we conclude that the trial court did not err in refusing to grant the Intervenors an express
easement to the park. The Intervenors' eighth point of error is overruled.


CONCLUSION

 For the reasons discussed above, we overrule all points of error presented in the
appeal and cross-appeal in this case. The trial court properly declared that the Browns have an
express easement to use the park. Additionally, the trial court's judgment concerning the
Intervenors' points was proper in all respects. Therefore, we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: June 13, 2002

Publish

1. At trial, there were thirty-three Intervenors, but twelve did not join in this appeal. The
Intervenors who join in this appeal are Charles M. Black, Jr., Kenneth Bramblett, Jane Bramblett,
Mural Cook, Lynne Cook, Travis Duncan, Lydia Taylor McBride, Betty Melcher, Harold J. Nelson,
Nikki Perrotta, Janet R. Rader, Anne Marie St. Martin, Jerome Urbanek, Theresa Wilson, John S.
Avery, Judy Avery, Darin Digby, Barbara Digby, Jana Buis, Julie Dees, and John Sharp Avery.
2. The deeds of many of these property owners contain express grants of easement to "the
East beach" or "the West beach" or both. At trial, these property owners asserted that "East beach"
refers to the disputed park area. This issue was submitted to the jury, which failed to find in favor
of the property owners. In its judgment, the trial court set the location and boundaries of these two
beach areas, both of which front on Lake Travis.