# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00377-CV

**Robert C. Bauer, Appellant**

**v.**

**Jim Williams, Individually, and Preiss Heights**
**Property Owners Association, Appellees**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT**
**NO. C99-0100A, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

Appellant Robert Bauer challenges the district court's denial of his request for a declaratory judgment that property owned by appellee Preiss Heights Property Owners Association is subject to an easement for purposes of ingress and egress to Bauer's property. In three issues, he invites this Court to overrule Texas law against the reservation of easements in favor of third parties and argues that the evidence conclusively established an express or implied easement, or easement by estoppel. Alternatively, he contends that the district court's failure to find an easement was against the great weight of the evidence. For the reasons explained below, we will reverse and remand.

**BACKGROUND**

In 1957 and 1958, Bruno Preiss[1] conveyed two tracts of land, located in the Preiss

Heights subdivision near New Braunfels, to John and Velma Bauer. The conveyance was subject

to a power-line easement, which has been held by the Comal Power Company since 1925. The

Bauer property partially fronts the Guadalupe River and also has a narrow frontage on Edwards

Boulevard, a public road. When appellant Robert Bauer, the son of John and Velma Bauer, first

visited the property in 1959, a power-line tower was on the Bauer property, approximately twenty-

five feet "off the roadway" fronting Edwards Boulevard. Bauer testified that the structure was

> a high voltage power line consisting of two tall wood poles with H-shaped arms
> across the top. And being the last structure carrying the wires down the [Guadalupe]
> river, it had guy wires in place to steady it down and the guy wires were parallel to
> the overhead wires. And then it had two sets of guy wires on each pole coming out
> to the side about 20 or so—about probably 25 foot on—coming out at a 45 degree
> angle to the line.

At the time of the conveyance from Preiss to the Bauers, Preiss owned the property that is adjacent

to the south side of the Bauer property. There is a road on the Preiss property, which the Bauers

began using in order to access their property.

In March 1967, Preiss[2] executed a general warranty deed conveying to Willie L.H.

Schlueter, Jr. and William H. Ulbricht, as co-owners, two other tracts of land, but reserving an

---

[1] Bruno Preiss executed the deed on behalf of himself and as attorney-in-fact for Alvin and Frieda Jarisch, Walter and Anna Staats, Linda Welderoth, and Daniel Preiss. Because Bruno Preiss executed the deed, and for ease of reference, we will refer to him as the grantor.

[2] Again, Bruno Preiss executed the deed on behalf of himself and as attorney-in-fact for the same six other individuals.

easement for the road serving the Bauer property. The March 1967 deed, to which Bauer was not

a party, recites that the Preiss property, as described by metes and bounds, was conveyed in whole

> SAVE AND EXCEPT: a 15.0 foot road easement described more particularly by metes and bounds as follows: [metes and bounds description omitted].
>
> All of the above surveys made on the ground by William J. Kolodize, [sic] R.P.S. 1462, on September 30, 1966.

Field notes written by Kolodzie on November 8, 1966, were introduced into evidence. The notes

recite: "Bruno P. Preiss, et. al., to John L. Bauer, a 15.0 foot road easement described more

particularly as follows [metes and bounds description omitted]."[3]

In April 1967, Schlueter and Ulbricht conveyed the property back to Preiss. In 1973

or 1974, the tower with wooden poles was replaced by a similar metal structure without guy wires.[4]

In May 1974, Preiss conveyed that same property to the Preiss Heights Property Owners Association,

Inc. (the Association) for use as a park. In 1994, appellant Robert Bauer inherited the adjacent

property from his parents.

Beginning in the late 1950s, Bauer used what is now the Association's park road for

access to the Bauer property approximately three to five times a year. He testified that his parents

---

[3] At trial, the district court sustained a hearsay objection to Kolodzie's testimony that Preiss must have asked him to survey the easement and draft the notes in that manner or he would not have done it. The court stated that it would not consider the testimony for the truth of the matter asserted but would consider it as the reason that Kolodzie performed the survey.

[4] Currently, the tower carries three transmission lines and has four metal legs that are approximately forty feet tall.

3

previously had accessed the property via the park road approximately four or five times a year. Bauer has two children, who have also visited the property and accessed it from the park road for several years. Bauer testified that neither he nor his children ever asked for permission to use the road because there was no reason to ask—"we had the right to use it"—because of a previous agreement between John Bauer and Preiss. Prior to 1997, no one objected to the Bauers' use of the park road.

In 1997, an Association meeting was held in which some members discussed security concerns related to individuals exiting the Guadalupe River and entering onto park property. The Association commissioned a survey, to which Bauer contributed, in order to determine the legal boundaries between Bauer's and the Association's property. Subsequently, the Association constructed a fence around its property, effectively blocking Bauer from using the road to access his property. At an Association meeting, Bauer requested that the fence be moved or that he be permitted to put a gate in the fence so that he could gain access. His request was denied.

After failed attempts to reach an agreement, Bauer sued for a declaration that he owned an express or implied easement or, alternatively, an easement by estoppel or prescription. The district court found that there was no easement in his favor and denied his request. This appeal followed.

## DISCUSSION

### Standard of review

We review declaratory judgments under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 1997); *Lidawi v. Progressive*

4

*County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Lidawi*, 112 S.W.3d at 730 (citing *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex. App.—Houston [1st Dist.] 1995, no writ.)). When, as in this case, a bench trial is conducted and the court does not enter findings of fact or conclusions of law to support its ruling, all facts necessary to support the judgment are implied. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

When a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)). Undisputed evidence contrary to the verdict may become conclusive (and thus cannot be disregarded) when it concerns physical facts that cannot be denied. *City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005). Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case. *Id.* at 816. We review the district court's legal conclusions de novo. *See BMC*, 83 S.W.3d at 794.

### *Implied easement*

In Bauer's third issue, he argues that he had an implied easement over the park road in order to access his property. An easement by "implied grant" is created when the dominant estate is conveyed by the grantor. *Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 429 (Tex.

5

App.—Austin 1998, no pet.) (citing *Daniel v. Fox*, 917 S.W.2d 106, 110 (Tex. App.—San Antonio 1996, writ denied)). The elements of an easement by implication are: (1) unity of ownership between the dominant and servient estates; (2) apparent use of the easement at the time the dominant estate was granted; (3) continuous use of the easement, so that the parties must have intended its use to pass by grant with the dominant estate; and (4) reasonable necessity, rather than a mere convenience, of the easement to the use and enjoyment of the dominant estate. *Vinson v. Brown*, 80 S.W.3d 221, 228-29 (Tex. App.—Austin 2002, no pet.) (citing *Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966)); *see Koonce v. J.E. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984); *Othen v. Rosier*, 226 S.W.2d 622, 625 (Tex. 1950). In cases involving easements by implied grant, it is sufficient if the easement in question was reasonably necessary to the convenient and comfortable enjoyment of the property as it existed when the severance was made. *Adams*, 975 S.W.2d at 429 (quoting *Daniel*, 917 S.W.2d at 110-11); *Teich v. Haby*, 408 S.W.2d 562, 566 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e.); *Barrick v. Gillette*, 187 S.W.2d 683, 687 (Tex. Civ. App.—Eastland 1945, writ ref'd w.o.m.); *Scarborough v. Anderson Bros. Const. Co.*, 90 S.W.2d 305, 310 (Tex. Civ. App.—El Paso 1936, writ dism'd). The burden of establishing these elements is on the party claiming the easement. *Holden v. Weidenfeller*, 929 S.W.2d 124, 129 (Tex. App.—San Antonio 1996, writ denied) (citing *Wilson v. McGuffin*, 749 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1988, writ denied)). We consider whether the requirements were met at the time of severance of the two estates. *Othen*, 226 S.W.2d at 625; *Holden*, 929 S.W.2d at 129 (citing *Westbrook v. Wright*, 477 S.W.2d 663, 666 (Tex. Civ. App.—Houston [14th Dist.] 1972, no writ)).

The parties do not dispute that the first three elements were met. Thus, our focus is on whether the easement in question was reasonably necessary to the convenient and comfortable enjoyment of the property as it existed when the severance was made.[5] *Adams*, 975 S.W.2d at 429.

Bauer testified that he first visited his parents' property in 1959 when he was on leave from the military. He accessed the property through the "existing, visible roadway through the property"—what is now known as the park road. He consistently entered the property through the park road until 1997 when the Association constructed the fence. He explained that he accessed the property in 1959 via the park road instead of Edwards Boulevard because the frontage to Edwards Boulevard "was a very steep, washed-out area and the [park] road was the way in and out [of] the property."

Furthermore, when the Bauers purchased the property in 1957 and 1958, there was a power-line tower located approximately twenty-five feet "off the roadway" from Edwards Boulevard. The location of the tower partially blocks the narrow frontage to Edwards Boulevard and, even in 1958, "made it totally impracticable to try to put any kind of road" on that side of the Bauer property. In 1973 or 1974, the wooden tower with poles and guy wires was replaced by a more modern steel tower structure. However, there have never been any paved or gravel roads on the Bauer property.

---

[5] The Association argues that the current structure does not prevent Bauer from accessing his property and that Robin Foster, Bauer's daughter, has accessed the property via a temporary road created in 2002 by the United States Department of Agriculture during a cleanup of the Guadalupe River. However, such evidence is not relevant to our inquiry of whether the implied easement was reasonably necessary at the time of the severance in 1957 or 1958. *See Adams v. Norsworthy Ranch, Ltd.*, 975 S.W.2d 424, 429 (Tex. App.—Austin 1998, no pet.) (citing *Daniel v. Fox*, 917 S.W.2d 106, 110-11 (Tex. App.—San Antonio 1996, writ denied)).

Robin Foster, Robert Bauer's daughter, testified that, since her birth in 1950, and until the fence was constructed in 1997, she had only accessed the Bauer property via the park road because "that was the only means in." Although her first memory of seeing the tower is when she was five years old, the original structure was not replaced until she was twenty-four years' old, in 1973 or 1974. She stated that the size of the original tower made the Bauer property inaccessible from Edwards Boulevard.

Jim Williams, president of the Association from 1991 to 1999 when suit was filed, testified that he has lived in Preiss Heights since 1988, but had no knowledge of any conversations between Bruno Preiss and the Bauers, or of the original tower because he was not alive in 1957. He acknowledged that the Association had built the fence around the park and that only members of the Association had a key to the entrance gate.

The Association argues that the court was presented with conflicting evidence and, as finder of fact, correctly determined that the road was not reasonably necessary to the convenient and comfortable enjoyment of the Bauer property in 1957 and 1958. Specifically, it argues that Bauer's testimony was conflicting because, although he unequivocally testified on direct examination that in 1957 and 1958, the original tower was larger than its current replacement, in his deposition and on cross-examination he admitted that the two were the same size. We disagree with the Association's characterization of Bauer's testimony.

At trial, the Association attempted to impeach Bauer by introducing testimony he gave during his deposition. The following exchange occurred:

Q: And in the course of that deposition, do you remember me asking you about these old power poles?

A: Yes, sir.

Q: And do you remember explaining to me about the fact that they were wooden poles and that they had some—what you called guy wires, G-U-Y wires.

A: Yes, sir.

Q: They came down from the poles to the ground?

A: Yes, sir.

. . . .

Q: So back in August 1999 when I deposed you . . . I asked you if the old obstructions were in existence. And you said almost the same obstruction exists today, right?

A: That's correct.

Q: And when I asked you if you meant the guy wires were there still, you said no because of the tower size.

A: That's correct.

The topic then changed and cross-examination continued.

We do not believe that Bauer's deposition testimony is inconsistent with his trial testimony that the original wooden tower with guy wires was a greater obstruction than the current steel tower. The deposition testimony focused on the size of the actual tower, which has not changed significantly. However, Bauer admitted that the guy wires were no longer attached to the steel tower as they had been to the wooden tower. Bauer's testimony that "almost the same obstruction exists"

9

is true—the base obstruction itself is almost the same, except the guy wires are no longer present. That testimony was clarified in the last question and answer. Thus, Bauer's testimony is not inconsistent with his deposition testimony and did not constitute conflicting evidence on a question of fact for the determination of the court.

The Association further asserts that the court had the opportunity to judge the credibility of Bauer, his daughter Robin Foster, Williams, and Bauer's uncle, Harvey Bauer, as well as to view documentary and photographic evidence. Most of the documentary and photographic evidence is related to the current status of the steel tower and its interference with current access to the Bauer property. However, our focus is on the reasonable necessity of the easement at the time of the severance in 1957 and 1958. *See Adams*, 975 S.W.2d at 429; *Daniel*, 917 S.W.2d at 110-11. Thus, the photographs showing current access to the property do not aid our determination of reasonable necessity, and the documentary evidence is limited to deeds and drawings of witnesses showing their opinion of the location of the obstruction in relation to the boundary lines. The drawings favor Bauer's assertions that, in 1957 and 1958, the tower obstructed the entrance to the Bauer property from Edwards Boulevard, and no witness contradicted that assertion. The fact that Robin Foster was five years old when she first remembers seeing the wooden tower and guy wires does not weaken the credibility of her testimony because she was approximately twenty-four years old when the tower was replaced, and her testimony regarding the location of the tower was uncontradicted.

Williams's testimony also does not preclude a finding that an easement was reasonably necessary for access to the Bauer property in 1957 and 1958. Mr. Williams was not alive

10

at that time, and he testified that he never had conversations with Preiss or the Bauers regarding their property. He did not move into the Preiss Heights neighborhood until 1988 and never saw the wooden tower with guy wires; therefore, he could not judge the extent of the obstruction the original tower created to access of the Bauer property.

Additionally, the Association misplaces its reliance on the deposition testimony of Harvey Bauer, Robert Bauer's eighty-four-year-old uncle, who also lives in Preiss Heights.[6] In 1955, Harvey purchased the property across the street from the Bauer property at issue. Although Harvey did not move to his property until 1972, he visited almost every weekend for eighteen years and testified that the Bauers always accessed their property through the park road. He recalled that no one from the Association had ever objected to the Bauers' use of the property until a few years before the lawsuit was filed. He stated that the Lower Colorado River Authority placed a tower towards the front of the Bauer property "around the '60s there somewhere—or '70s, right in there." The Association's attorney then asked "Was there a tower or pole of any kind there before that?" Harvey answered, "There used to be a pole there originally when we bought here. There was a pole that a power line went through." In its brief, the Association emphasizes that Harvey testified that there was a *pole* that a power line went through, rather than a tower. The Association urges that this testimony creates a question of fact regarding the obstruction and that the court was entitled to resolve the question of fact against Bauer. We disagree. When read as a whole, Harvey's testimony confirmed the existence of the wooden tower—whether described as a pole or tower—that carried at least one power line and was replaced sometime in the 1970's.

---

[6] For ease of reference, we will refer to Harvey Bauer by his first name.

The parties agree that Bauer adduced sufficient evidence of the first three elements. *See Vinson*, 80 S.W.3d at 228-29. Furthermore, there was undisputed testimony regarding physical facts that cannot be denied—primarily that, in 1957 and 1958, the wooden tower carrying power lines and supported by guy wires obstructed access to the Bauer property from Edwards Boulevard. *See City of Keller*, 168 S.W.3d at 815 (considering when undisputed evidence contrary to the verdict may become conclusive). Moreover, Bauer presented uncontroverted testimony that the frontage to Edwards Boulevard "was a very steep, washed-out area" that was not accessible in 1957 and 1958. At that time, there were no alternative routes by which the Bauers could access their property. Thus, we find that the fourth element was satisfied because there was conclusive evidence that use of the park road for purposes of ingress and egress to Bauer's property was a reasonable necessity, rather than a mere convenience, of the easement to the use and enjoyment of the dominant estate at the time of the severance. *See id*.; *see also Bickler*, 403 S.W.2d at 357; *Othen*, 226 S.W.2d at 625. Accordingly, we hold that Bauer conclusively established the existence of an implied easement over the park road for purposes of ingress and egress to the Bauer property. *See City of Keller*, 168 S.W.3d at 815-16. We sustain Bauer's third issue.

Because we have sustained Bauer's third issue, we need not reach his first or second issues regarding his alternative theories of an easement.

**CONCLUSION**

Having determined that Bauer has conclusively established the existence of an implied easement over the park road for purposes of ingress and egress to the Bauer property, we reverse the order of the district court denying his request for declaratory relief and remand for a

12

determination of what amount of attorney's fees, if any, should be awarded. *See* Tex. Civ. Prac. &

Rem. Code Ann. § 37.009 (West 1997).

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed:   May 26, 2006