Opinion issued November 6, 2008





 
 





    







In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-06-00961-CV
____________

BARBARA HILBURN, Appellant

V.

PROVIDIAN HOLDINGS, INC., Appellee




On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2004-63597




MEMORANDUM OPINION

          Appellant, Barbara Hilburn, appeals from a declaratory judgment, rendered
after a bench trial, that construed an easement agreement between her and appellee,
Providian Holdings, Inc. (“Providian”), and that also awarded attorney’s fees to
Providian. We determine, as a matter of law, whether the trial court properly
interpreted the easement agreement. We further determine whether the trial court
abused its discretion by admitting the testimony of an untimely designated expert
witness and by awarding attorney’s fees to Providian based upon the expert’s
testimony. We affirm.
Background
Providian owns two properties that are located at the intersection of San
Jacinto Street and Anita Street in Houston, Texas. One property is a two-story
building with a small parking lot (“the first lot”). The other property is a parking
lot across Anita Street (“the second lot”). Providian rents out space for several
clinics in the building on the first lot and uses the second lot to supplement parking
for its staff and retail businesses. The property at issue is the second lot. The
second lot had only one entrance: a driveway into it from Anita Street. Hilburn
owned an adjoining parking lot (“the third lot”). In 2000, Hilburn purchased a 25-foot by 100-foot easement from Cochran & Cochran (also known as Cochran &
Associates), Providian’s predecessor in ownership of the second lot, because there
was no entrance to the third lot. The easement granted her use of the entrance to
the second lot, and passage over the second lot, to access the third lot. When
Hilburn purchased the easement, a fence spanned the Anita Street side of the
second lot, and a gate was located at the entrance to the second lot. Prior to
purchasing the second lot from Cochran & Cochran, Providian was aware that the
entrance to the second lot was burdened by Hilburn’s easement and that Hilburn
had a right to use the easement strip and the entrance to the second lot to access the
third lot.
          Providian sued Hilburn in November 2004, alleging that she had been
closing or locking the gate across the entrance to the second lot, which prevented
Providian from accessing its own property. Providian alleged that Hilburn’s
locking the gate constituted a nuisance and sought declaratory and injunctive relief,
damages, and attorney’s fees.


 Hilburn countersued for trespass, nuisance, and
declaratory relief.
          On February 16, 2005, prior to the bench trial in this case, a different judge
rendered a temporary restraining order (“TRO 1”) in favor of Hilburn, which
temporarily enjoined Providian from “destroying the gate across the easement, the
poles supporting it, or the chain or lock securing it.” Although not in the record, a
second temporary restraining order (“TRO 2”) was rendered by the trial court at
least 18 months prior to trial and sometime after TRO 1.


 TRO 2 required Hilburn
to keep the gate open during normal business hours, allowing Providian, its
employees, tenants, and their respective clients access to the second lot.
          At the bench trial, Providian argued that the easement was non-exclusive
and, therefore, that Hilburn did not have the right to restrict access by closing or
locking the gate. In support, Providian’s owner, Khyati Undavia, testified that
Hilburn had routinely locked the gate during business hours;


 she denied that
Hilburn had given her the combination to the lock; she denied knowing whether
Hilburn had given her employees the combination; and she opined that, even if
Hilburn had provided her with the lock’s code, that “wouldn’t [have] work[ed] for
me because this parking lot was bought for specific purposes of us being able to
use it and to have access—unrestricted access to the parking lot.” In contrast,
Hilburn asserted at trial that she had an absolute right of control over the gate
because the gate was an appurtenance to her easement;


 she testified that the
contracting parties intended that she have the right to control the gate; she testified
that that right existed to guard against a “grave concern for security,” which
involved “vagrants . . . walking onto the property and into the area”; and she
denied “that Providian has ever been denied access to their property” because she
locked the gate only after business hours and gave Providian the lock’s
combination.
          The trial court found in favor of Providian, declaring that the easement
agreement did not give Hilburn the right to close or to lock the gate and ordering
that Hilburn pay $10,000 in attorney’s fees. Providian’s request for a permanent
injunction, its claims for nuisance and trespass, and Hilburn’s counterclaims (to the
extent that they may still have been pending at the time of trial, which the record
does not clearly reveal), were disposed of by “mother hubbard” language in the
final judgment. The court did not enter findings of fact or conclusions of law.
 
 
Scope of the Easement Agreement
          In her first issue, Hilburn contends that the trial court improperly interpreted
the easement agreement not to grant her the right to close or to lock the gate across
her easement.


 First, Hilburn contends that the gate was an appurtenance to the
easement and that the agreement gave her complete control over all appurtenances,
including the right to lock or to close the gate. Alternatively, Hilburn contends that
the easement agreement was ambiguous on its face and, thus, that the intent of the
parties to the agreement could be determined by her testimony at trial, which was
that the easement’s purpose, although unstated in the agreement, was also for
security from and exclusion of unauthorized persons, such as after-hours bar
patrons.
A.      Applicable Law and Standard of Review
          We construe easement agreements according to the rules governing contract
construction. Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 700 (Tex.
2002). To determine the scope of the easement holder’s rights, we look to the
contracting parties’ intentions, as expressed in the grant.  Id. We read the terms of
the easement as a whole to reach an interpretation of the parties’ intentions and to
carry out the purpose for which the easement was created. Id. Unless the language
in an agreement is ambiguous, we rely solely on the written instrument. Koelsch v.
Indus. Gas Supply Corp., 132 S.W.3d 494, 498 (Tex. App.—Houston [1st Dist.]
2004, pet. denied) (citing Adams v. Norsworthy Ranch, Ltd., 975 S.W.2d 424, 427
(Tex. App.—Austin 1998, no pet.)).
          Whether a contract is ambiguous is a question of law. Weaver v. Highlands
Ins. Co., 4 S.W.3d 826, 830 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)). An ambiguity does not arise
merely because the parties to the agreement have different interpretations of a term. 
DeWitt County Elec. Co-op., Inc. v. Parks, 1 S.W.3d 96, 100 (Tex. 1999). Rather,
a term in a contract is deemed ambiguous only after the application of established
rules of contract construction leaves it susceptible to more than one reasonable
meaning. Id.
          We assume that the contracting parties intended for every clause in an
agreement to have some effect. Koelsch, 132 S.W.3d at 498. When the provisions
of an agreement appear to be in conflict with one another, we harmonize them, if at
all possible, to reflect the parties’ intentions. Id. We examine and consider the
entire contract to harmonize and to give effect to all of its provisions, so that none
will be rendered meaningless. Id. 
          We review the trial court’s legal conclusions concerning an unambiguous
contract de novo. See MCI Telecomm. Corp. v. Tex. Util. Elec. Co., 995 S.W.2d
647, 651 (Tex. 1999). But when the contract is ambiguous, interpretation of the
instrument becomes an issue of fact. See Weaver, 4 S.W.3d at 830.
 
 
B.      Whether the Easement Agreement Is Ambiguous
          Hilburn contends that the easement agreement is ambiguous because the
agreement mistakenly defines the “dominant estate” as the same property currently
owned by Providian [the second lot]. She argues that this is a legal impossibility
because Providian’s property is the property burdened by the easement, meaning
that it is the servient estate, not the dominant estate. See Allen v. Allen, No. 07-06-0150-CV, 2008 WL 3890210, at *11 (Tex. App.—Amarillo Aug. 21, 2008, no pet.
h.) (explaining that easement creates “burden on one estate, the servient estate, for
the benefit of another, the dominant estate”).
          The easement agreement does mistakenly refer to the second lot (Providian’s
property) as the “dominant estate,” when it is in fact the servient estate. But that
mistake does not render the entire agreement ambiguous, especially because
neither party disputed below which estate was the dominant one and which was the
servient one. Moreover, this mistake has no bearing on the easement agreement’s
provisions on which Hilburn rests her appellate challenges: the “Grant of
Easement” and “Improvement and Maintenance of Easement Property” provisions. 
Thus, as a matter of law, the easement agreement is not ambiguous for the reason
that Hilburn argues.
          Because we determine that the easement agreement is not ambiguous as a
matter of law for the reason that Hilburn argues, we disagree with her contention
that we may rely on her testimony of the contracting parties’ intent in construing
the agreement.


 See Rutherford v. Randal, 593 S.W.2d 949, 953 (Tex. 1980) (“The
absence of an ambiguity in the deed negates all justification for the consideration
of extrinsic evidence concerning the original intent of the grantor . . . . Under these
circumstances, this court will limit its search for the grantor’s intent to that intent
which was expressed within the four corners of the deed.”). Hilburn’s subjective
belief as to what the contracting parties intended to convey with the easement is
immaterial, insofar as such intentions are not found in, and in fact add to, the plain
language of the agreement itself. See Koelsch, 132 S.W.3d at 498; see also Gary
E. Patterson & Assocs., P.C. v. Holub, No. 01-04-00108-CV, 2008 WL 100233, at
*11 (Tex. App.—Houston [1st Dist.] Jan. 10, 2008, pet. denied) (providing that
“‘[u]nder the parol evidence rule, . . . all prior negotiations and agreements with
regard to the same subject matter are excluded from consideration’” and that “‘a
written instrument presumes that all prior agreements relating to the transaction
have been merged into it and will be enforced as written and cannot be added to,
varied, or contradicted by parol testimony.’”) (citations omitted). The easement
agreement made this plain by incorporating a merger clause, which provided, “This
agreement contains the complete agreement of the parties and cannot be varied
except by written agreement of the parties. The parties agree that there are no oral
agreements, representations, or warranties that are not expressly set forth in this
agreement.” See Gary E. Patterson & Assocs., 2008 WL 100233, at *11 (“If a
written contract’s terms are unambiguous . . . , ‘then parol evidence is inadmissible
. . . to vary, add to or contradict its terms’—especially when . . . the contract
contains a merger clause.”).
C.      What the Plain Meaning of the Easement Agreement Is
          We are thus left with construing the easement agreement’s plain language. 
See Koelsch, 132 S.W.3d at 498 (providing that, unless agreement’s language is
ambiguous, court relies solely on the written instrument’s terms for interpretation).
          The easement agreement is entitled, “Easement Agreement for Access.” 
(Emphasis added.) The agreement’s stated purpose is “[f]or providing free and
uninterrupted pedestrian and vehicular ingress to and egress from the Dominant
Estate property [the third lot].” As these provisions demonstrate, the easement’s
clear purpose was merely for access to and from the third lot. This limited
easement purpose was then incorporated into the granting language itself:
 Grantor . . . grants, sells, and conveys to Grantee [Hilburn] . . . an
easement over, on, and across the Easement Property for the Easement
Purpose and for the benefit of the Dominant Estate [the third lot],
together with all and singular the rights and appurtenances thereto in
any way belonging (collectively, the “Easement”) . . . . 

(Emphasis added.) 
          Additionally, under the “Terms and Conditions” section of the agreement,
the parties expressly provided that “[t]he Easement is nonexclusive . . . .” The
agreement then provided for a corresponding reservation of rights in Providian’s
predecessor (and thus in Providian):
Grantor reserved for Grantor and Grantor’s . . . successors . . . the
right to continue to use and enjoy the surface of the Easement
Property for all purposes that do not interfere or interrupt the use of
enjoyment of the Easement by Grantee [Hilburn] for the Easement
Purposes. Grantor reserves for Grantor and Grantor’s . . . successors
. . . the right to use all or part of the Easement in conjunction with
Grantee [Hilburn] . . . .

(Emphasis added.)

          All of this language unambiguously makes Hilburn’s easement
nonexclusive, provides that its purpose is to give access to and from the third lot,
and allows Providian the simultaneous use and enjoyment of the easement, i.e., the
driveway to its parking lot, which is the sole common entrance. Hilburn contends
that requiring the gate to remain unlocked will interfere with the use of her
easement, but it will not: the easement gives Hilburn access to and from the third
lot; allowing Providian the use of the easement by requiring that the gate remain
unlocked does not hinder that purpose.
 
 
D.      Why Hilburn Contends that the Agreement Means Something Else
          Hilburn nonetheless contends, based on three provisions of the easement
agreement, that she has the right to close or to lock the gate. 
          1.       Hilburn’s Duties and the Easement’s Grant
          First, she notes that the easement agreement gave her the duty to maintain
the easement property and to keep it clean and neat.


 Second, Hilburn relies on the
granting language itself, which provides that the easement was “for the Easement
Purpose and for the benefit of the Dominant Estate [the third lot], together with all
and singular the rights and appurtenances thereto . . . .” (Emphasis added.) She
argues that, because the gate is an appurtenance to her easement by virtue of its
being attached to the easement property, because the easement requires that she
maintain and care for the easement property, and because locking the gate will
keep both lots safe, the agreement gave her the right to lock the gate. 
          For the purposes of our discussion, we assume without deciding that the gate
was an appurtenance to the easement. The gate’s being an appurtenance does not
give Hilburn the unfettered right to preclude Providian’s use of the easement when
its use does not conflict with Hilburn’s easement rights. The provisions on which
Hilburn relies must be read in context. See Koelsch, 132 S.W.3d at 498. The
whole purpose of the easement is to grant Hilburn access to and from her property. 
The duty for Hilburn to keep the easement clean and neat and to pay for its
maintenance does not expand the basic grant that she received. Additionally, the
easement agreement plainly states that Hilburn’s grant is nonexclusive. The only
entrance to both the second and third lots is through the easement on the second
lot, Providian’s property. If the agreement allowed Hilburn to shut off this sole
entrance, it would in effect allow Hilburn the exclusive use and control of the
easement by precluding Providian’s entrance or exit to the second lot. And under
Hilburn’s interpretation, she could use the easement, and anything attached to it, to
block Providian from access to its own property simply because doing so would be
necessary for the benefit of the third lot.


 Yet the agreement does not grant
Hilburn this exclusive control. Were we to read the agreement as Hilburn does, the
“Easement Purpose” provision would conflict with the agreement’s granting
language, which violates the rule of construction that contracted terms should not
be read to conflict with each other if at all possible. See Koelsch, 132 S.W.3d at
498.
          2.       Further Maintenance Provision
          Third, Hilburn relies on the following (italicized) portion of the agreement’s
“Improvements and Maintenance” provision: 
All matters concerning the configuration, construction, installation,
maintenance, replacement, and removal of the Road Improvements are
at Grantee’s [Hilburn’s] sole discretion, subject to the performance of
Grantee’s obligations under this agreement. Grantee has the right to
remove or relocate any fences within the Easement Property or along
or near its boundary lines if reasonably necessary to construct, install,
maintain, replace, or remove the Road Improvements or for the road
to continue onto other lands or easements owned by Grantee and
adjacent to the Easement Property, subject to replacement of the
fences to their original condition on the completion of the work.

(Emphasis added.)
          Initially, we note that this section refers to fences, not gates. And even if
“fences” could mean “gates,” the provision grants Hilburn the right to only the
temporary relocation of them, subject to their replacement to their original
condition. Finally, the right to remove and to relocate fences is granted only as
necessary to construct “Road Improvements.” The agreement defines “Road
Improvements” as “a road with all culverts, bridges, drainage ditches, sewer
facilities, and similar or related utilities under or across any portion of the
Easement Property.” Because Hilburn does not seek to construct, install, maintain,
replace, or remove “Road Improvements,” the contractual language concerning the
right to remove and to relocate fences temporarily does not apply.
E.      What We Hold
          For all of these reasons, we hold that the easement agreement did not give
Hilburn the right to close or to lock the gate at the entrance to her easement. 
Therefore, we hold that the trial court did not err in rendering its declaratory
judgment interpreting the easement, and we overrule Hilburn’s first issue.
Expert Testimony on Attorney’s Fees
          In her second issue, Hilburn contends that the trial court erred in allowing
opposing counsel, Wade T. Howard, to testify as an expert witness on attorney’s
fees because he had not been timely designated as such. Hilburn further contends
that, because this expert’s testimony was the sole evidence of Providian’s
attorney’s fees, there was no evidence to support the trial court’s award.



A.      Standard of Review
          We apply an abuse-of-discretion standard to the question of whether a trial
court erred in an evidentiary ruling. Harris County v. Inter Nos, Ltd., 199 S.W.3d
363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.); see Beard Family P’ship
v. Commercial Indem. Ins. Co., 116 S.W.3d 839, 850 (Tex. App.—Austin 2003, no
pet.) (applying abuse-of-discretion standard when trial court allowed attorney’s
fees expert to testify despite not having been timely designated). A trial court
abuses its discretion when it acts arbitrarily, unreasonably, or without reference to
guiding rules or principles. Inter Nos, 199 S.W.3d at 367; Powers v. Mem’l
Hermann Hosp. Sys., 81 S.W.3d 463, 465 (Tex. App.—Houston [1st Dist.] 2002,
pet. denied). 
B.      The Law
          When a request for disclosure is made under rule 194.2(f) (concerning
testifying experts), a party must designate testifying experts within a specified time
frame, unless the court orders otherwise. See Tex. R. Civ. P. 195.2 (“Unless
otherwise ordered by the court, a party must designate experts—that is, furnish
information requested under Rule 194.2(f)—by the later of the following two
dates: . . . .”). Texas Rule of Civil Procedure 193.6(a) provides that “[a] party who
fails to make . . . a discovery response in a timely manner may not introduce in
evidence material or information that was not timely disclosed . . . .” Tex. R. Civ.
P. 193.6(a). “The purpose of [rule 193.6] is to prevent trial by ambush.” Inter Nos,
199 S.W.3d at 367.
          Rule 193.6 nonetheless allows the trial court to admit evidence violating (for
example) rule 195.2 upon a showing of good cause or if its use would not unfairly
surprise or prejudice the other party. Tex. R. Civ. P. 193.6(a)(1)–(2). The burden
of establishing good cause or the lack of unfair surprise or unfair prejudice is on
the party seeking to call the witness. Tex. R. Civ. P. 193.6(b). A finding of good
cause or of the lack of unfair surprise or unfair prejudice must be supported by
evidence in the record.  Id. Ultimately, the trial court has the discretion to
determine whether the offering party met its burden of showing grounds for good
cause. Aluminum Co. of Am. v. Bullock, 870 S.W.2d 2, 3 (Tex. 1994) (referencing
predecessor to rule 193.6). But even if the party seeking to introduce testimony
does not carry its burden of establishing the grounds for the exception, the court
may grant a continuance or temporarily postpone the trial to allow the proponent to
make its discovery response and to allow the opponent to conduct discovery
regarding any new information presented by that discovery response. See Tex. R.
Civ. P. 193.6(c). 
C.      The Record
          At the very start of trial, the following discussion occurred:
Hilburn:Trace Sherer and Barbara Hilburn for the Defendant and
we’re ready.
 
Court:All right. I guess that moots the Motion for Continuance
then; is that correct?
 
Hilburn:We’re ready—I’m sorry. Subject to the motions that we
filed, the Motion for Continuance and Motion to
Exclude.



 
Court:Then you are not ready? You want a continuance?
 
Hilburn:Well, that’s correct.
 
. . .
 
Court:Well, how much? I’ve got the Motion on Expert
Testimony and what I am going to do is, I think, give you
the rest of the week to do all of the discovery that you
want and “tee” it up first thing Monday morning.[


]
 
Hilburn:I need the Plaintiff, who has the burden of proof and—
 
Court:Just tell me who you want. Don’t tell me about who’s
got the burden of proof. Tell me what expert depositions
you want and we’ll get them for you . . . . So, you just
tell me what experts you want and I might just let you do
them today and then we may “tee” it up tomorrow
morning or we may do it Monday.
 
. . .
 
Hilburn:Again, Your Honor, without waiving—
 
Court:You want [Howard’s] deposition on attorney’s fees?
 
Hilburn:Without waiving any of our objections that it’s a trial by
ambush, for us to be forced to go to trial within a 30-day
period of time and not timely designating experts, any
expert that might—and respectively [sic] to this Court, is
that any expert that he’s going to bring over our
objection, is my understanding is part and parcel of our
Motion for Continuance. This Court entered a docket
control order that the Plaintiff, Providian, was to
designate their experts by, I think—
 
Court:Ms. Hilburn.
 
Hilburn:—it is September of 2005.
 
Court:Ms. Hilburn. Ms. Hilburn, let me interrupt you. Rule
193.6 says that the party . . . I mean, I’ve got the
discretion to hold that you are not surprised by this in the
first place, but I am willing to give you the benefit of the
doubt. Rule 193.6 . . . says that—that I can continue to
the case or temporarily postpone the trial to allow
opposing parties to conduct discovery regarding any new
information. So, you tell me what discovery you want
and if—I’ll give it to you. You can go do it this
afternoon. And we’ll start the case tomorrow or Friday
sometime. And we’re going to get right to this thing . . . .
 
Hilburn:Your Honor, we respectfully—
 
Court:No. You tell me what you want exactly. Do you want to
depose Mr. Howard about attorney’s fees?
 
Hilburn:May I proceed, Your Honor?
 
Court:Give me a straight answer, Ms. Hilburn. Do you want to
depose Mr. Howard about attorney’s fees.
 
. . .
 
Court:Would you answer that question, please?
 
Hilburn:The first question? I think there was multiple questions. 
My first question in response, Your Honor, is: I would
like the Plaintiff to timely designate, outside of 30 days,
any experts that they want to seek expert opinions from
the trier of fact in this case. And I think that a
continuance to allow us to do that, under the rules and the
case law, is that it must be done within two or three days
and I am not going to waive my objection—
 
Court:All right.
 
Hilburn:—to the expert testimonies being—experts being
designated within two or three days of trial and subject to
that, I understand the Court’s question.
 
. . .
 
Hilburn:And subject to that, any experts that he is planning on
bringing—subject to my objection that it’s a trial by
ambush—obviously I would like to have either an expert
report and/or a deposition.
 
Court:Now, I am giving you a deposition. So, when—who do
you want to take?
 
Hilburn:He’s never designated experts, Your Honor. How can I
say who I want to take?
 
Court:All right. Ms. Hilburn, the two persons who have been
identified are a surveyor and Mr. Howard. Those are the
two, quote, experts we’re dealing with. Do you want to
depose Mr. Howard?
 
Hilburn:Subject to my objection—
 
Court:I understand that you want a 30-day notice. I consider
your demand for the 30 days notice frivolous. I am
getting ready to—in the scheme of things—probably
going to sanction you in this Court for frivolous conduct
because you are being recalcitrant. You are trying to
slow things down. Your co-counsel came in here last
week and announced ready. So, now when you couldn’t
get the case worked out this morning, we’re going into
the stall tactic.
 
. . .
 
Court:All right. . . . [W]e know that there are two potential
experts. Their testimony is of limited significance it
appears to this Court, but you are wanting to stand on
your 30 days . . . . I am saying, fairness doesn’t seem, to
me, to dictate 30 days in this situation. So the question
is: if we’re not going to take 30 days, we’re just going to
take a day or two to postpone the trial. Then, do you
want to depose Mr. Howard? And do you want to depose
the surveyor? That’s the only real issue at this point.

Providian then clarified that it would not call the surveyor because his testimony
related to its trespass claim, which it intended to drop. The trial court then
continued:
Court:Well, if you [Providian] are dropping him [the surveyor],
then that’s a nonissue, Ms. Hilburn. So, do you want to
depose Mr. Howard on the attorney’s fees?
 
Hilburn:Subject to my objection before the Court, I’d like some
time over lunch, but I am inclined to say no.
 
Court:All right. We’ll let you think about it over lunch. My
inclination is that—well, I’ll tell you what: if you want to
depose—if you want to go forward, you can depose Mr.
Howard over lunch. I will volunteer my court reporter
here to take your deposition. So that the record is clear,
you have an opportunity to depose Mr. Howard over
lunch about attorney’s fees if you want to. And if you
don’t want to, then you can come back and tell me about
that when you get done and we will just wait until you
are done with attorney’s fees before we get started. 
Okay?
 
Hilburn:Your Honor, the Defendant—Counter-plaintiff’s Motion
to Preclude Providian’s—Providian’s Expert Testimony
is being denied?
 
Court:Well, at the present time, I guess it is. Then, if Mr.
Howard refuses to give you his deposition, I might
consider granting it. But if he’s willing to give his
deposition at lunch time and you are willing to take it,
then in that circumstance, I think the Motion to Preclude
Evidence on Attorney’s Fees will be denied. 
 
Hilburn:Okay. And, likewise, my Motion for Continuance, based
on the Court’s denying my Motion to Strike Plaintiff’s
Experts is likewise denied?
 
Court:No. I am telling you that I am going to continue the case
temporarily to give you the opportunity to depose the
experts [sic]. I am not going to continue it for 30 days;
that part of the request is denied. But I am going to give
you relief under [rule] 193.6 to avoid the surprise and to
take the depositions you say you’ve been denied. I don’t
think that there’s any real surprise to you, in terms of
who the experts are, certainly not on the attorney’s fees. 
And that really is what appears to be all that we’re
dealing with right now. So your Motion for Continuance
is granted to allow you to take the deposition, if you feel
necessary. All right?
 
Hilburn:And that’s granted just for?
 
Court:For a short time, yes.
 
Hilburn:Just for today?
 
Court: For today. Unless, if there is for some reason that you
can tell me that it can’t be taken today. I think maybe
that’s probably all that is needed. And if we need to, we
can adjourn the trial when we get done, to let you come
in with additional evidence. So, there’s lots of ways to
avoid any prejudice to you, under the rules; and that’s
what I intend to do. If I see some prejudice, I will act to
avoid it.
(Emphasis added.)
          Hilburn did not depose Howard during the time granted by the trial court and
renewed her objection when he was called to testify, saying only, “[J]ust so the
record is clear, we object to any expert testimony on the part of Mr. Howard
concerning his fees.” The trial court overruled the objection, stating:
Court:I gave you an opportunity at lunch to depose Mr. Howard
on attorney’s fees, as I indicated I would, and evidently
y’all decided not to do that. So, under the circumstances,
there’s no real surprise about what’s happening here and
the Court makes a finding under 193.6 that there is good
cause for allowing the testimony, at this point, and there
is lack of unfair surprise because you—particularly an
unfair prejudice—particularly in the light of the fact that
you didn’t take advantage of the opportunity to depose
him that I offered you. So, I will allow him to testify. 
And it may be that I can make a finding of attorney’s
fees, totally, without regard to what the testimony is, but
I’ll deal with that when I get there.
(Emphasis added.) Howard then testified concerning his fees, and Hilburn cross-examined him.
D.      Hilburn’s Arguments
          Hilburn contends that the record lacks a showing by Providian of good cause
or lack of unfair surprise. Hilburn also contends that the trial court’s decision to
postpone the trial for a lunchtime deposition did not mitigate unfair surprise. 
Furthermore, Hilburn argues that because Howard’s testimony should have been
excluded, and because his was the only testimony offered on Providian’s attorney’s
fees, no evidence supported the trial court’s award.
          Despite the trial court’s reference to good cause and lack of unfair surprise,
which findings are relevant to rule 193.6(a) and (b), what the trial court actually
did was to allow a continuance, a ruling that is consistent with rule 193.6(c). Rule
193.6(a) and (b) assume that a proffered witness was not timely revealed in
discovery, but allow the court nonetheless to admit his testimony if the proponent
shows either good cause for the failure to disclose or that the failure did not
unfairly surprise or prejudice the opposing party. See Tex. R. Civ. P. 193.6(a), (b). 
Rule 193.6(c), in contrast, assumes that the proponent has not made the showing
required to invoke the exception of 193.6(a) and (b), but nonetheless allows the
court to “grant a continuance or temporarily postpone the trial to allow a response
to be made, amended, or supplemented, and to allow opposing parties to conduct
discovery regarding any new information presented by that response.” See Tex. R.
Civ. P. 193.6(c). Thus, relief under rule 193.6(c) is available if the burden of rule
193.6(a) and (b) was not met. The trial court’s ultimate ruling was thus one under
rule 193.6(c), regardless of its additional verbal findings of good cause and lack of
unfair surprise.
          Hilburn contends that the trial court’s offer to allow her to depose
Providian’s expert witness on attorney’s fees during lunch did not mitigate unfair
surprise because she would have been forced to prepare questions, to anticipate
potential responses, and to look at and to interpret bills (which Howard admitted
that he did not have with him at trial) during only a lunch break. We understand
this to be an argument that the trial court’s order under rule 193.6(c) did not allow
Hilburn sufficient time to prepare to depose Providian’s expert adequately. 
          The record indicates that Hilburn, an attorney herself, was able to determine
the reasonableness and necessity of attorney’s fees associated with the lawsuit
because she apparently was designated to testify on her own behalf regarding the
amount of attorney’s fees that she had charged—a conclusion that we reach
because she did testify to this later without objection.


 It was thus not
unreasonable for the trial court to conclude that a lawyer with this knowledge
would not need more than a lunch break to depose a fellow lawyer about the fees
that were reasonable and necessary in the case. Furthermore, when the trial court
advised Hilburn that it would not postpone trial for a full 30 days because that
repeated request was “frivolous,” showed “recalcitran[ce],” and appeared to be a
“stall tactic,” Hilburn did not explain why she needed the full 30 days to prepare,
why her request for that amount of time was not frivolous, or how it was not a stall
tactic or mere recalcitrance. Likewise, when the trial court first ruled that Hilburn
could take Howard’s deposition over the lunch break, it qualified that ruling by
indicating that its decision would stand “[u]nless . . . there is . . . some reason that
you can tell me that it can’t be taken today.” Hilburn did not give the court any
reason in response. Nor, after Hilburn had finished cross-examining Howard on
fees, did she ask to avail herself of the trial court’s other offer that, “if we need to,
we can adjourn the trial when we get done, to let you come in with additional
evidence.”
          Hilburn chose not avail herself of the trial court’s initial offer, which we
have held was reasonable, that was made to remedy any unfair prejudice to her, nor
did she explain when given the chance why that offer was insufficient. 
Accordingly, she can hardly now complain that she suffered unfair prejudice by the
admission of Howard’s testimony. See Santos v. Comm’n for Lawyer Discipline,
140 S.W.3d 397, 404 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (“Santos
fails to demonstrate he was prejudiced by the trial court’s actions. The trial court
gave Santos the opportunity for additional discovery relating to attorney’s fees
sought by the Commission and offered to continue the hearing to allow him to
obtain the information he claimed he was not provided. In effect, the trial court
granted the same relief available under 193.6(c) . . . , that is, a postponement to
allow a response to the discovery and to allow Santos to conduct discovery on any
new information presented by the response. Santos declined the offer to continue
the proceedings, insisting on going forward. He can hardly be heard to argue that
he was unfairly prejudiced.”); cf. Wal-Mart Stores, Inc. v. Tinsley, 998 S.W.2d
664, 671–72 (Tex. App.—Texarkana 1999, pet. denied) (holding—under
predecessor to rule 193.6, which provided only for “good cause” exception to
automatic exclusion of witness, and under common law, which gave court
discretion to cure prejudice of untimely discovery by postponing trial and imposing
sanctions—that party opposing witness waived complaint about witness’s
testimony when court offered to declare mistrial and to postpone trial to allow
witness’s deposition, offering party agreed to pay for deposition and to offer
witness over recess or lunch hour, court alternatively agreed to accept offering
party’s offer if opposing party agreed, and opposing party rejected court’s offers). 
          And in any event, even if the court’s ruling had been an abuse of discretion,
it is not at all apparent that Hilburn was harmed by it: (1) her cross-examination of
Howard spans eight pages of the reporter’s record; (2) it appears thorough,
including questions on how much was billed in trial preparation, how long before
trial he began trial preparation, how his bills had been only $6,500 14 months
before trial and how the case had lain dormant until pretrial preparation, what his
hourly rate was for trial preparation, how many years he had practiced, and how he
could not give exact hours for his billing totals; and (3) she does not explain on
appeal how the cross-examination that she actually conducted was rendered
ineffective by the court’s ruling. See Tex. R. Civ. P. 44.1(a)(1).
          Accordingly, we hold that the trial court’s decision to allow Hilburn to
depose Howard during a lunch break was not an abuse of discretion. Hilburn did
not avail herself of this offer, did not explain when prompted why that offer was
insufficient, and did not avail herself of the related offer to adjourn the trial at the
close of the testimony to allow her to present any additional evidence that she
might need. Therefore, we further hold that the trial court did not abuse its
discretion in admitting the expert testimony.


 Accordingly, there was some
evidence in the record to support the award of attorney’s fees. 
          For these reasons, we overrule Hilburn’s second issue.
 

Conclusion
          We affirm the judgment of the trial court.
 
 
Tim Taft
Justice

Panel consists of Chief Justice Radack and Justices Taft and Alcala.